484 A.2d 88

**PRUDENTIAL PROPERTY & CASUALTY INSURANCE COMPANY, Appellant**

v.

**Ishmael FALLIGAN and the Pennsylvania Assigned Claims Plan and Albert L. Bricklin Esquire and Stanton Dubin Esquire and John J. Walsh, Jr. Esquire.**

**Paulette DONOVAN**

v.

**KEYSTONE INSURANCE COMPANY and Travelers Insurance Company.**

**Appeal of KEYSTONE INSURANCE COMPANY.**

Superior Court of Pennsylvania.

Argued June 6, 1984.

Filed Oct. 26, 1984.

Petition for Allowance of Appeal Denied May 6, 1985.

196

Allan C. Molotsky, Philadelphia, for Prudential, appellant.

Dennis Veneziale, Philadelphia, for Keystone, appellant.

Herbert H. Yaskin, Philadelphia, for Falligan, appellee.

Jeffrey A. Less, Philadelphia, for Pa. Assigned, appellees.

Pamela B. Gagne, Philadelphia, for Travelers, appellee.

John A. Rothschild, Philadelphia, for Donovan, appellee.

Before SPAETH, President Judge, and McEWEN and TAMILIA, JJ.

TAMILIA, Judge:

■ These appeals are being considered together as they raise the issue of whether an insurance company designated to provide basic loss benefits to an uninsured victim under the No-Fault Act[1] is also required to provide uninsured motorist benefits. We hold that appellants, Prudential Property & Casualty Insurance Company and Keystone Insurance Company, are required to provide such coverage, and therefore, affirm the respective orders from which these appeals have been taken.

In the Prudential appeal, No. 03334 Philadelphia, 1982, claimant, Ishmael Falligan, a pedestrian, was allegedly struck and injured by an automobile operated by Michael Nixon on or about August 29, 1979. The automobile was owned by Jeannette Nixon, Michael Nixon's mother, but apparently operated by Michael without her permission. Jeannette Nixon is the named insured of a policy of automobile insurance issued by appellant, Prudential, covering the automobile involved in the accident. Appellant paid Falligan basic loss benefits pursuant to § 1009.204(a)(4) of the No-Fault Act which provides:

[1]. Act of July 19, 1974, P.L. 489, No. 176, §§ 101 et seq., 40 P.S. §§ 1009.101 et seq.

§ 1009.204   **Source of basic restoration benefits**

(a) **Applicable security.**—The security for the payment of basic loss benefits applicable to an injury to:

(1) an employee, or to the spouse or other relative of any employee residing in the same household as the employee, if the accident resulting in injury occurs while the victim or deceased victim is driving or occupying a motor vehicle furnished by such employee's employer, is the security for the payment of basic loss benefits covering such motor vehicle or, if none, any other security applicable to such victim;

(2) an insured is the security under which the victim or deceased victim is insured;

(3) the driver or other occupant of a motor vehicle involved in an accident resulting in injury who is not an insured is the security covering such vehicle;

(4) *an individual who is not an insured or the driver or other occupant of a motor vehicle involved in an accident resulting in injury is the security covering any motor vehicle involved in such accident. For purposes of this paragraph, a parked and unoccupied motor vehicle is not a motor vehicle involved in an accident, unless it was parked so as to cause unreasonable risk of injury;* and

(5) any other individual is the applicable assigned claims plan.

Falligan apparently had no insurance coverage of his own nor was he a driver of or other occupant of the automobile involved in the accident. *See Hayes v. Erie Insurance Exchange*, 261 Pa.Super. 171, 395 A.2d 1370 (1978); *see also Schimmelbusch v. Royal-Globe Insurance Company*, 247 Pa.Super. 28, 371 A.2d 1021 (1977). Falligan then sought to recover uninsured motorist benefits from appellant since Michael Nixon was allegedly uninsured. Appellant denied coverage for uninsured motorist benefits on the grounds that its policy of insurance issued to Jeannette Nixon was without legal effect since the automobile covered was being operated at the time of the accident without her permission and that the Pennsylvania Assigned Claims Plan, rather

than itself, was responsible for any uninsured motorist benefits claimed by Falligan.[2]

The facts of the Keystone appeal, No. 00187 Philadelphia, 1983, are similar. The parties to this appeal stipulated that claimant, Paullette Donovan, a pedestrian, sustained personal injuries on November 3, 1979, when she was struck by an automobile owned by Naomi Gathers and insured by appellant, Keystone. The operator of the vehicle that struck Donovan was an unknown person who had stolen the vehicle. At the time of the hit and run, Donovan did not own an automobile and was not covered by any motor vehicle insurance for basic loss benefits or uninsured motorist benefits. She sought no-fault benefits from appellant under the policy of insurance which appellant had issued to Naomi Gathers. Appellant paid Donovan basic loss benefits since it was the applicable security pursuant to § 1009.-204(a)(4). *See Hayes v. Erie Insurance Exchange, supra; see also Schimmelbusch v. Royal-Globe Insurance Company, supra.* Donovan then sought uninsured motorist benefits from appellant. Appellant refused this request on the grounds that its policy of insurance issued to Gathers was without legal effect since the automobile covered was operated at the time of the accident by an unknown person without the permission of Gathers. Donovan applied to the Pennsylvania Assigned Claims Plan for uninsured motorist benefits. Travelers Insurance Company was designated as the insurer by the Plan but they, too, denied Donovan's

---

2. Falligan then filed a petition demanding arbitration of his claim, and appellant acquiesced by appointing an arbitrator on its behalf. Falligan, upon agreement with Prudential, withdrew the petition. Arbitration was scheduled for June 15, 1982, but prior to this date, appellant filed a petition to enjoin permanently the arbitration proceeding and to compel the Pennsylvania Assigned Claims Plan to assume handling the uninsured motorist claim of Falligan. The lower court stayed the arbitration proceeding. The parties, including the Plan, submitted a stipulation to the lower court requesting a determination as to whether Falligan was entitled to uninsured motorist benefits and if so, from whom. The lower court found that Michael Nixon had been operating the automobile at the time of the accident without express or implied permission of his mother, thus rendering appellant's disclaimer of liability under its policy valid. However, the lower court held that despite the validity of the disclaimer, appellant was obliged to extend uninsured motorist coverage to Falligan, based on *Tubner v. State Farm Automobile Insurance Company,* 496 Pa. 215, 436 A.2d 621 (1981). The lower court denied appellant's petition to enjoin, and ordered appellant and Falligan to proceed to arbitration.

claim for uninsured motorist benefits. Donovan instituted suit against appellant and Travelers Insurance Company for uninsured motorist benefits and subsequently amended her complaint to include a prayer for declaratory relief seeking a determination of responsibility of either appellant or Travelers. The parties entered into a stipulation of facts, as previously recited above, and the lower court held appellant responsible for uninsured motorist benefits to Donovan, and ordered appellant to litigate the merits of the uninsured motorist claim or pay benefits to Donovan without further litigation.

In *Tubner v. State Farm Automobile Insurance Company,* 496 Pa. 215, 436 A.2d 621 (1981), an uninsured individual was killed when the uninsured car in which he was a passenger was hit by an uninsured motorist. Because no policy of basic loss insurance was applicable to the uninsured victim, a claim was made with the No-Fault Assigned Claims Plan. The Supreme Court permitted recovery, under the assigned claims plan, of uninsured motorist benefits on behalf of the uninsured deceased passenger stating that:

Because assigned insurers are obligated precisely *as if they had issued basic loss insurance policies,* and because every policy of basic loss insurance issued in Pennsylvania *must include uninsured motorist coverage,* the right to uninsured motorist benefits under the assigned claims plan follows *a fortiori,* from a straightforward reading of the statute and the regulation lawfully promulgated thereunder. (footnote omitted)

Any other interpretation of appellee's statutory rights under the assigned claims plan would frustrate the Legislature's intention, expressed in Section 102 of this remedial legislation, to provide maximum feasible restoration to all accident victims in a comprehensive, fair, and uniform manner. (footnote omitted) Adoption of State Farm's view would have the discriminatory effect of affording recovery of general damages to all motor vehicle accident victims injured by uninsured motorists except those covered by the assigned claims plan, and thus would perpetu-

ate many of the harsh results of the outdated fault system by denying general damages to innocent victims of irresponsible drivers.[13]

[13] ... Because a claimant under assigned claims plan is covered *as if* he had obtained a policy of basic loss insurance, his right to uninsured motorist benefits cannot be distinguished from that of holders of valid insurance policies.

496 Pa. at 219–20, 436 A.2d at 623 (emphasis in original).

*Tubner* has been recently cited with approval in *Modesta v. Southeastern Pennsylvania Transportation Authority*, 503 Pa. 437, 469 A.2d 1019 (1983), wherein the Court held that self-insurers are required to maintain uninsured motorist coverage, overruling *Johnson v. Yellow Cab Company*, 456 Pa. 256, 317 A.2d 245 (1974). The Court also held that an uninsured passenger injured on a SEPTA bus when it was hit by an uninsured motorist was entitled to uninsured motorist benefits. The Court reaffirmed the view expressed in *Tubner* that victims suffering injuries at the hands of uninsured motorists are provided uninsured motorist benefits, in addition to basic loss benefits, under the No-Fault Act:

Three factors related to the No-Fault Act highlight the unacceptable situation created by this Court's decision in *Johnson v. Yellow Cab:* 1) the No-Fault Act has made insurance mandatory for all owners of motor vehicles, *see* 40 P.S. § 1009.104(a); 2) every policy of insurance issued under the no-fault act must provide for uninsured motorist coverage, *see* 31 Pa.Code § 66.11; and 3) the No-Fault Act provides for insurance coverage, including uninsured motorist benefits, for every victim of an uninsured motorist, either through a policy of insurance or through the no-fault assigned claims plan, *see* 40 P.S. § 1009.108(a), 40 P.S. § 1009.204(a), *Tubner v. State Farm Automobile Insurance Company*, 496 Pa. 215, 436 A.2d 621 (1981).

As a result of these changes brought about by the No-Fault Act and this Court's decision in *Johnson v. Yellow Cab*, until today there were two groups of individuals who received no uninsured motorist protection: uninsured motorists who caused accidents, and uninsured occupants of self-insured vehicles. It is reasonable to

deny uninsured motorist coverage to the first group, since they have not only chosen not to comply with the mandatory insurance law, but have also caused the accidents which resulted in their injuries; (footnote omitted) however, it makes no sense in terms of any policy of deterrence, retribution or liberal construction of a remedial statute, to deny uninsured motorist coverage to uninsured individuals who have not caused the accidents which resulted in their injuries, simply because they were occupants of self-insured vehicles. (footnote omitted)

503 Pa. at 443, 469 A.2d at 1022–23.

■ Appellants in each appeal argue that *Tubner* applies only to carriers processing claims under the Pennsylvania Assigned Claims Plan since such carriers are obligated under § 1009.108(a) of the No-Fault Act to act as if a valid policy had been issued. This argument is an ineffective attempt to narrow the holding of *Tubner* to only those situations where a victim must look to the assigned claims plan as the source of payment since the victim does not fall within the ambit of sub-paragraphs (1), (2), (3) or (4) of § 1009.204(a) of the No-Fault Act. Clearly, *Tubner* cannot be read in this manner. "[T]he No-Fault Act provides for insurance coverage, including uninsured motorist benefits, for every victim of an uninsured motorist, either through a policy of insurance or through the no-fault assigned claims plan, *see* 40 P.S. § 1009.108(a), 40 P.S. § 1009.204(a), *Tubner v. State Farm Automobile Insurance Company*, 496 Pa. 215, 436 A.2d 621 (1981)." *Modesta v. Southeastern Pennsylvania Transportation Authority, supra,* 503 Pa. at 443, 469 A.2d at 1022. We perceive no distinction in status between an uninsured victim who must look to the applicable security for coverage of his claim to uninsured motorist benefits under § 1009.204(a)(4) and an uninsured victim who must look to the assigned claims plan under § 1009.204(a)(5). Thus, appellants' interpretation would frustrate the "Legislature's intention, expressed in Section 102 of this remedial legislation, to provide maximum feasible restoration to all accident victims in a comprehensive, fair and uniform manner." *Tubner v. State Farm Auto-*

*mobile Insurance Company, supra,* 496 Pa. at 220, 436 A.2d at 623. For the same reason, we cannot accept Prudential's disclaimer argument since a claimant's right to uninsured motorist benefits is not contingent upon the status of the driver of the insured vehicle.[3]

The respective orders from which these appeals have been taken are affirmed.[4]

---

3. Of course, the status of the driver of the insured vehicle is necessary to prove that the victim was injured by an "uninsured" motorist. *See Tubner v. State Farm Mutual Automobile Insurance Company,* 280 Pa.Super. 38, 44 n. 8, 421 A.2d 392, 395 n. 8 (1980).

4. In the Prudential appeal, appellant's prayer for relief was also in the nature of declaratory relief. *See* 42 Pa.C.S.A. § 7531. The lower court properly took jurisdiction of the question of uninsured motorist responsibility to Falligan since this question did not arise under the arbitration clause of subject policy, nor was concerned with the application or construction of the arbitration provision. *See Allstate Insurance Company v. Taylor,* 434 Pa. 21, 252 A.2d 618 (1969); *Webb v. United Services Automobile Association,* 227 Pa.Super. 508, 323 A.2d 737 (1974). With regard to the lower court's order to proceed to arbitration, the lower court did not err. An agreement to arbitrate existed by virtue of the arbitration provision in the subject policy, and the dispute here is arbitrable. We note, however, that Falligan's claim to uninsured motorist benefits must be proven at arbitration in the same way as if he maintained a policy of automobile liability insurance, i.e. he must prove that he was injured by an "uninsured" motorist. *See* Note 3, *supra.* This issue is left to be decided at arbitration. *See All State Insurance Company v. Taylor, supra; see National Grange Mutual Insurance Company v. Kuhn,* 428 Pa. 179, 236 A.2d 758 (1968).

In the Keystone appeal, the parties stipulated to the fact that the driver striking Donovan was uninsured. This is a judicial admission and as such cannot be contradicted by the parties at arbitration. *See and compare Dale Manufacturing Company v. Bressi,* 491 Pa. 493, 421 A.2d 653 (1980).