571 A.2d 457

**Charles P. ECTOR, Appellee,**

**v.**

**MOTORISTS INSURANCE COMPANIES and the Travelers Companies.**

**Appeal of MOTORISTS INSURANCE COMPANIES.**

Superior Court of Pennsylvania.

Argued Oct. 27, 1989.

Filed March 6, 1990.

Petition for Allowance of Appeal
Denied July 31, 1990.

David B. Torrey, Pittsburgh, for appellant.

Gary M. Lang, Pittsburgh, for Ector, appellee.

William J. Begley, Pittsburgh, for Travelers Companies, appellee.

Before DEL SOLE, BECK and MONTGOMERY, JJ.

BECK, Judge:

The issue is whether an uninsured pedestrian injured by an insured stolen vehicle is entitled to seek recovery of non-economic damages from the insurer of the motor vehicle or the Assigned Claims Plan. We hold that the insurer of the motor vehicle, appellant Motorists Insurance Companies ("Motorists"), is the source of recovery for the uninsured pedestrian seeking non-economic damages. In so holding, we affirm the trial court's denial of appellant-Motorists' summary judgment motion, its grant of appellee-Ector's summary judgment motion and its grant of appellee-The Travelers' Insurance Company ("Travelers") summary judgment motion.

460

The facts are not in dispute. Albert Mitchell owned an automobile insured by Motorists. James Henry King, who was not covered by any automobile insurance, stole the Mitchell automobile. While operating the vehicle, King drove onto the sidewalk and ran into Charles P. Ector. This collision resulted in Ector's breaking his leg. At the time of the accident, neither Ector, nor anyone at his residence was insured by a valid automobile insurance policy.

Thereafter, Ector filed suit against King. Ector sought only non-economic damages because the Pennsylvania Department of Public Welfare had paid Ector's medical bills. After Ector learned that King was not covered under an automobile insurance policy, Ector attempted to collect the damages he sought from Motorists under the Motor Vehicle Financial Responsibility Law ("Financial Responsibility Law"), 75 Pa.C.S. § 1701 et seq. Motorists denied liability for the non-economic damages Ector sought. Ector then sought coverage for his non-economic losses from the Assigned Claims Plan. Travelers also denied liability for the non-economic damages. Ector then brought a declaratory judgment action against Motorists and Travelers. The appeal is from that action.

■ Appellee Travelers first argues that the appeal should be quashed. Travelers argues, *inter alia*, that appellant is not an "aggrieved" party within the meaning of Pa.R.App.P. 501.[1] Appellee–Travelers argues that Motorists is not adversely affected by the dismissal of Travelers from this action. We find no merit in this contention.

The Pennsylvania Supreme Court recently addressed this issue in *Mitchell v. Travelers Ins. Co.*, 522 Pa. 545, 564 A.2d 1232 (1989). In *Mitchell*, the court considered a case in which one of two insurance carriers, Public Service Mutual Insurance ("PSMI") and The Travelers Insurance Company ("Travelers"), was required to pay plaintiff basic

---

1. This rule provides that "[e]xcept where the right of appeal is enlarged by statute, any party who is aggrieved by an appealable order, or a fiduciary whose estate or trust is so aggrieved, may appeal therefrom." Pa.R.A.P. 501.

loss benefits. *Id.*, 522 Pa. at 546, 564 A.2d at 1233. The trial court granted summary judgment in favor of PSMI. The Pennsylvania Supreme Court explained that in cases in which a plaintiff seeks recovery against multiple defendants, "dismissal of any one defendant from the action" necessarily "affect[s] the interests of the other defendants." *Id.*, 522 Pa. at 547, 564 A.2d at 1234. The court explained that while a plaintiff's interest is to have liability assessed against any defendant, the defendants have an independent interest to ensure "that liability is imposed on the responsible party." *Id.*, 522 Pa. at 546, 564 A.2d at 1233. The court concluded that based upon this independent interest, Travelers possessed standing to appeal the trial court's grant of PSMI's motion for summary judgment. *Id.*, 522 Pa. at 548, 564 A.2d at 1235.

The reasoning in *Mitchell* is equally applicable to the instant case. For the reasons relied upon by the court in *Mitchell*, we conclude that Motorists has standing to appeal the trial court's grant of Travelers' summary judgment motion.

Travelers also asserts that because in its order the trial court compelled appellant and appellee-Ector to proceed to arbitration, this is not a final order, but rather is interlocutory, and therefore, not appealable. We find no merit in this contention.

█  While appellee-Travelers is correct in its assertion that orders compelling arbitration are interlocutory and, therefore, not appealable as a matter of right, *Gardner v. Prudential Ins. Co.*, 332 Pa.Super. 358, 359, 481 A.2d 654, 655 (1984), citing 42 Pa.C.S. § 7320(a)(1) (Purdon 1982), appellant in the instant case is not appealing from an order compelling arbitration. Rather, appellant is appealing from the trial court's denial of its summary judgment motion and grant of Ector's and Travelers' summary judgment motions.

The Pennsylvania Commonwealth Court has noted that "[i]n determining appealability of orders, Pennsylvania courts adhere to the 'final judgment rule,' which holds that an appeal will lie only from a final order unless otherwise

permitted by statute or rule." *Bollinger by Carraghan v. Obrecht*, 122 Pa.Commw. 562, 564–65, 552 A.2d 359, 361 (1989).

In deciding that the order is appealable we conclude that *Mitchell*,[2] *supra*, a case procedurally analogous to the instant appeal, is dispositive. In that case, like the instant one, one defendant's motion for summary judgment was granted, while another defendant's summary judgment motion was denied. The plaintiff in *Mitchell* was struck by a motorcycle. He brought suit against the insurer of the motorcycle, PSMI, and the designated carrier under the Assigned Claims Plan, Travelers.[3] PSMI and Travelers filed cross-motions for summary judgment, seeking a determination of which of the two was liable for plaintiff's injuries. PSMI's motion was granted, while Travelers' motion was denied. Only Travelers appealed this order. The *Mitchell* court concluded that the trial court's order granting PSMI's motion and denying Travelers' motion was an appealable order. *Mitchell*, 522 Pa. at 548, 564 A.2d at 1235. The *Mitchell* court relied upon *Shaffer v. Pennsylvania Assigned Claims Plan*, 359 Pa.Super. 238, 518 A.2d 1213 (1986), in which this court explained that the granting of summary judgment in favor of one defendant " 'required no further action by the court' " as to that defendant and was, therefore, appealable. *Mitchell*, 522 Pa. at 548, 564 A.2d at 1235, quoting *Shaffer*, 359 Pa.Super. at 247, 518 A.2d at 1217.

In the instant appeal, too, the trial court's denial of Motorists' motion for summary judgment and grant of Travelers' motion for summary judgment required no fur-

---

**2.** .We distinguish the principle of appealability established in *Mitchell*, a multi-defendant suit, from the usual proposition that the denial of summary judgment is not an appealable order. "[A]n order *granting* a defendant's motion for summary judgment has been held to be a final and appealable order." *Sweener v. First Baptist Church of Emporium, Pennsylvania*, 516 Pa. 534, 536, 533 A.2d 998, 1000 (1987).

**3.** This case is discussed earlier in this opinion within the discussion of standing.

ther action by the trial court. This was a final order and, therefore, appealable to this court.

Having decided that Motorists possessed standing to challenge the trial court's order and that the trial court's order was final and appealable, we now consider whether, under the Financial Responsibility Law, Ector has a right to recover uninsured motorist benefits from either Motorists or Travelers.

Appellee–Travelers contends that we are bound by our 1984 decision in *Prudential Ins. Co. v. Falligan,* 335 Pa.Super. 195, 484 A.2d 88 (1984), in which under the (now repealed) No–Fault Motor Vehicle Insurance Act, 40 Pa.S. §§ 1009.101 *et seq.* appellant-Motorists would clearly be liable for the uninsured motorist benefits sought by appellee-Ector. Conversely, appellant asserts that because *Falligan* was based upon the No–Fault Act's policy of "maximum feasible restoration," we are no longer bound by this decision.

■ After a careful analysis of the pertinent cases and the arguments asserted by appellees and appellant, we conclude that despite the repeal of the No–Fault Act, the reasoning employed by the *Falligan* court is correct and controls the disposition of the case at bar. We conclude that the trial court was correct in holding Motorists liable to Ector for uninsured motorist benefits.

A motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Pa.R.C.P. 1035(b).

An appellate court reviewing the grant of a motion for summary judgment is required to:

view the evidence in the light most favorable to the non-moving party and any doubts must be resolved against the entry of judgment. In so doing, we accept as true all well-pleaded facts in appellant's pleadings and

give appellant the benefit of all reasonable inferences to be drawn therefrom. Summary judgment is appropriate only in those cases which are clear and free from doubt. *Hackenberg v. SEPTA*, 384 Pa.Super. 335, 336, 558 A.2d 860, 861 (1989), quoting *Bobb v. Kraybill*, 354 Pa.Super. 361, 364, 511 A.2d 1379, 1380 (1986), *alloc. den.*, 513 Pa. 633, 520 A.2d 1384 (1987) (citations omitted). Based upon this standard, we conclude that the trial judge was correct in denying appellant's motion for summary judgment and granting appellees' motions for summary judgment.

Appellees–Ector and Travelers suggest that in evaluating appellee–Ector's claim, we are bound by *Tubner v. State Farm Mut. Auto. Ins. Co.*, 496 Pa. 215, 436 A.2d 621 (1981) and *Prudential Ins. Co. v. Falligan*, 335 Pa.Super. 195, 484 A.2d 88 (1984). We agree.

In *Tubner*, Jerry Amey ("decedent") died of injuries received while he was a passenger in an uninsured motor vehicle. *Tubner*, 496 Pa. at 216, 436 A.2d at 622. Decedent did not own a motor vehicle and, therefore, had no automobile insurance. As a result, under the Assigned Claims Plan, State Farm Mutual Insurance Co. ("State Farm") was named as the participating insurer and paid basic loss benefits to decedent's administratrix. *Id.*, 496 Pa. at 216, 436 A.2d at 622. However, the administratrix of decedent's estate also contended that she was entitled to uninsured motorist benefits from State Farm. *Id.*, 496 Pa. at 216, 436 A.2d at 622.

The Pennsylvania Supreme Court held that:

Because assigned insurers are obligated precisely *as if they had issued basic loss insurance policies,* and because *every* policy of basic loss insurance issued in Pennsylvania *must include uninsured motorist coverage,* the right to uninsured motorist benefits under the assigned claims plan follows *a fortiori* from a straight-forward reading of the statute and the regulation lawfully promulgated thereunder.

Any other interpretation of appellee's statutory rights under the assigned claims plan would frustrate the Legislature's intention, expressed in Section 102 of this remedi-

al legislation, to provide maximum feasible restoration to all accident victims in a comprehensive, fair, and uniform manner.

*Id.,* 496 Pa. at 217, 436 A.2d at 623 (footnotes omitted). The court opined that to hold otherwise "would perpetuate many of the harsh results of the outdated fault system by denying general damages to innocent victims of irresponsible drivers." *Id.,* 496 Pa. at 217, 436 A.2d at 623 (footnote omitted).

Three years later in *Falligan,* Ishmael Falligan, a pedestrian who had no insurance coverage of his own, was injured by an automobile which was operated by the owner's son without the owners permission. The automobile was insured by Prudential Property & Casualty Insurance Company ("Prudential"). *Falligan,* 335 Pa.Super. at 196, 484 A.2d at 89. Prudential paid Falligan basic loss benefits. Falligan also sought uninsured motorist benefits from Prudential. Prudential denied coverage for the uninsured motorist benefits sought, arguing that at the time of the accident, because the vehicle was operated without the owner's permission, the insurance policy covering the car was not applicable. *Id.,* 335 Pa.Superior Ct. at 197, 484 A.2d at 90.

The court consolidated *Donovan v. Keystone Ins. Co.* with *Falligan.* In *Donovan,* Paullette Donovan, a pedestrian, was struck by an automobile insured by Keystone Insurance Company ("Keystone") and operated by a person who had stolen the vehicle. Donovan was not covered by any insurance policy and sought recovery of basic loss benefits and uninsured motorist benefits from Keystone. *Id.,* 335 Pa.Superior Ct. at 197, 484 A.2d at 90. Keystone paid Donovan the basic loss benefits she sought, but refused to pay her uninsured motorist benefits because the operator of the vehicle at the time of the accident did not have the vehicle owner's permission to drive the vehicle. *Id.,* 335 Pa.Superior Ct. at 197, 484 A.2d at 90.

The Superior Court of Pennsylvania, relying on *Tubner,* concluded that no distinction could be made between an uninsured victim seeking uninsured motorist benefits under the Assigned Claims Plan, as was the case in *Tubner,* and

an uninsured victim seeking the same benefits from the insurer of the vehicle which injured the victim. *Id.*, 335 Pa.Superior Ct. at 199, 484 A.2d at 92. The court concluded that Prudential and Keystone were required to provide uninsured motorist benefits to the respective plaintiffs. *Id.*, 335 Pa.Superior Ct. at 196, 484 A.2d at 89. To hold otherwise, the court explained, would frustrate the purpose of the No–Fault Act, which is " 'to provide maximum feasible restoration to all accident victims in a comprehensive, fair and uniform manner.' " *Id.*, 335 Pa.Superior Ct. at 199, 484 A.2d at 92, quoting *Tubner*, 496 Pa. at 220, 436 A.2d at 623. Appellant contends that this quoted language differentiates *Falligan* from the case sub judice. We disagree.

While appellant is correct in pointing out that the Motor Vehicle Financial Responsibility Law does not contain any policy language analogous to the "maximum feasible restoration" language contained in the No–Fault Act, 40 Pa.S.A. § 1009.102(a)(3), this court has noted that because "[a] financial responsibility act is remedial in nature" it is to be "liberally construed so as to attain the legislative intent to protect the general public from loss caused by ... *negligence.*" *Donegal Mut. Ins. Co. v. Long*, 387 Pa.Super. 574, 580, 564 A.2d 937, 943 (1989), quoting *Couch on Insurance 2d* (Rev. ed.) § 45:733 (emphasis added) (citations omitted). While this language is not contained in the Financial Responsibility Law, it has been cited with approval by this court. And although this language does not mirror the language contained in the No–Fault Act and relied upon by the *Falligan* court, it is sufficiently analogous to require this court to follow our decision in *Falligan*. We conclude, therefore, that based upon our holding in *Falligan*, appellant is liable to appellee-Ector for the uninsured motorist benefits provided for in Motorists' policy.

Appellant contends, however, that section 1731 of the Uninsured and Underinsured Motorist Coverage subchapter of the Financial Responsibility Law precludes this result. This section provides that "[u]ninsured motorist coverage shall provide protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and

are legally entitled to recover damages therefor from owners or operators of uninsured motor vehicles." 75 Pa.Cons. Stat.Ann. § 1731 (Purdon Supp.1989). Appellant contends that because the motor vehicle which injured appellee–Ector was not "uninsured" [4], as the statute requires, appellee-Ector is not entitled to uninsured motorist benefits.

While the language cited by appellant, in a vacuum, might arguably control the outcome of the case sub judice, the General Assembly, when it enacted the Financial Responsibility Law, could not have contemplated the instant fact situation nor intended the result suggested by appellant.[5] This is so because, as appellee-Ector correctly points out in his brief, appellant's suggested interpretation of the Financial Responsibility Law would deny appellee-Ector the uninsured motorist damages he seeks because uninsured motorist benefits are not available to a victim injured by an insured vehicle. On the other hand, if appellee-Ector had been injured by an uninsured vehicle, he would have been permitted recovery of all his damages including his non-economic losses from the Assigned Claims Plan. Appellee-Ector's brief at 9. The General Assembly could not have intended such an absurd and unreasonable result.

We note that "[i]n ascertaining the intention of the General Assembly in the enactment of a statute" we may pre-

---

4. The Financial Responsibility Law defines an "Uninsured Motor Vehicle" as:

    (1) A motor vehicle for which there is no liability insurance or self-insurance applicable at the time of the accident.

    (2) A motor vehicle for which the insurance company denied coverage or the insurance company is or becomes involved in insolvency proceedings in any jurisdiction.

    (3) An unidentified motor vehicle that causes an accident resulting in injury provided the accident resulting is reported to the police or proper governmental authority and the claimant notifies his insurer within 30 days, or as soon as practicable thereafter, that the claimant or his legal representative has a legal action arising out of the accident.

*Id.* at § 1701.

5. We emphasize that "[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa.Cons.Stat.Ann. § 1921(a) (Purdon Supp. 1989).

sume "[t]hat the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable." 1 Pa.Cons.Stat.Ann. § 1922 (Purdon Supp.1989). *McCoy v. Roth*, 128 Pa.Commw. 374, 379, 563 A.2d 606, 608 (1989). See *Fireman's Fund Ins. Co. v. Nationwide Mut. Ins. Co.*, 317 Pa.Super. 497, 500, 464 A.2d 431, 434 (1983). We also emphasize that in ascertaining the legislative intent, we must utilize a common sense approach. *Commonwealth v. Smith*, 386 Pa.Super. 626, 630, 563 A.2d 905, 909 (1989). Employing a common sense approach, we conclude that the interpretation advanced by appellant is not persuasive.

We conclude, therefore, that *Falligan* controls the disposition of this case. In so concluding, we affirm the trial court.

Order affirmed.

DEL SOLE, J., files concurring opinion.

DEL SOLE, Judge, concurring.

I join the Majority in its determination that this appeal should not be quashed. Further, I join the Majority in its analysis that the Appellant, Motorists Insurance Companies, is the insurer responsible to provide the noneconomic loss benefits sought by Charles P. Ector, Appellee. I write separately only to express additional reasons for this view.

The Appellant argues that Ector is not entitled to uninsured motorist benefits because the vehicle which caused his injury was insured by it at the time of the accident. Admittedly, there was a policy of insurance covering the automobile when it was stolen and later injured Mr. Ector. However, for uninsured motorists purposes, the vehicle was uninsured. 75 Pa.C.S.A. § 1701 defines an uninsured motorist vehicle as follows:

"(1) A motor vehicle for which there is no liability insurance or self insurance applicable at the time of the accident."

The policy issued by Motorists, which contained third-party liability insurance, does not provide coverage in this case. That policy provides under the liability exclusions:

"(a) We do not provide liability coverage for any person:

.    .    .    .    .

8. Using a vehicle without a reasonable belief that the person is entitled to do so."

Even though there was a liability policy of insurance on the vehicle at the time of the accident, the unauthorized use of the vehicle means that it was not insured for liability purposes.

The next question is whether the assigned benefits plan carrier, Travelers, or the carrier insuring the vehicle, Motorists, has responsibility for the uneconomic insurance benefits. Had Mr. Ector been entitled to receive economic benefits, there is no question that he would have received those from the carrier insuring the vehicle. Both 75 Pa.C.S.A. § 1713 titled "Source of Benefits" and the Motorists policy so provide. 75 Pa.C.S.A. § 1713 "Source of Benefits" states:

(a) GENERAL RULE.

Except as provided in § 1714 (relating to ineligible claimants), a person who suffers injury out of the maintenance or use of motor vehicle shall recover first party benefits against the applicable insurance coverage in the following order of priority:

.    .    .    .    .

(4) For a person who is not the occupant of a motor vehicle, the policy on any motor vehicle involved in the accident....

Also, endorsement U111 10-85 of the Motorists policy defines an insured for first party benefits coverage as:

"INSURED" means:

1. You or family member;
2. Any other person:
    a. while occupying your covered auto; or

b. while not occupying a motor vehicle if injured as a result of an accident in Pennsylvania involving your covered auto.

It is clear from both the statutory language and the policy provisions that Motorists is the benefits provider under the MVFRA. Further, it is clear that for the purposes of uninsured motorists coverage, there is no liability insurance available as a result of this accident involving a stolen vehicle.

We must next determine whether the benefits provider is responsible for providing uninsured motorists benefits to an injured claimant and I agree with the majority that the answer is yes. My agreement stems from my view that the Majority properly analyzes and applies the cases of *Tubner v. State Farm Mutual Auto Insurance Co.*, 496 Pa 215, 436 A.2d 621 (1981) and *Prudential Insurance Co. v. Falligan*, 335 Pa.Super. 195, 484 A.2d 88 (1984). In addition, further support for this view is found in the MVFRA. This act created an assigned claims plan for the payment of benefits to a person who otherwise would not be insured but who would qualify. 75 Pa.C.S.A. § 1754 provides additional coverage to such persons making claims under the assigned claims plan and states:

An eligible claimant who has no other source of applicable uninsured motorist coverage and is otherwise entitled to recover in an action in tort against a party who has failed to comply with this chapter may recover for losses or damages suffered as a result of the injury up to $15,000 subject to an aggregate limit for all claims arising out of any one motor vehicle accident of $30.000....

The legislature in passing the MVFRA, codified case law expressed in *Tubner* and *Prudential* by mandating the assigned claims plan carrier provide uninsured motorist coverage. From this I conclude that the legislative intent is evident and it is that injured claimants in Pennsylvania who otherwise qualify under the Act, should receive both first party benefits and uninsured motorists benefits, if applica-

ble, from the carrier that is responsible for providing first party benefits.

To adopt the view advanced by the Appellant would create a class of injured claimants whose benefits would be limited below those which the legislature established.