665 A.2d 1

**Joann FRAZIER, Appellee**

v.

**STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, Appellant.**

Superior Court of Pennsylvania.

Argued June 22, 1995.

Filed Sept. 19, 1995.

Sue A. Eckell, Philadelphia, for appellant.

Fred J. Ambrose, Jr., Bala Cynwyd, for appellee.

Before CAVANAUGH, WIEAND and OLSZEWSKI, JJ.

CAVANAUGH, Judge:

This appeal is from the court's order allowing appellee, an uninsured pedestrian, to recover uninsured motorist benefits for injuries she sustained as the result of a hit and run accident. Appellee was struck by an insured vehicle which had been stolen. The parties stipulated that the vehicle was being driven without the insured's consent. For the reasons that follow we reverse.

Appellee was struck by a vehicle bearing license tag number WRK–670 at the intersection of 19th Street and Lehigh Avenue on the afternoon of October 21, 1991. Appellee testified that the vehicle was a grey Chevrolet Corvette, that she was able to see and memorize the license tag number as the car sped away, that the license tag was blue and yellow in color, and that a Fraternal Order of Police (FOP) decal was on the back of the vehicle.

A cherry-red Chevrolet Corvette, bearing a blue and yellow Pennsylvania license tag numbered WRK–670 was stolen from the parking lot of the Melrose Diner at approximately 10:30 AM that same day. The vehicle, which had an FOP decal on the license tag was owned by Raymond Lare and was insured under a policy issued by appellant, State Farm.

Mr. Lare's policy included uninsured motorist benefits. Appellant sought to recover those benefits under the policy. State Farm denied coverage on the grounds that 1) there was no conclusive proof that the insured vehicle was the one which struck appellee, and 2) that, in any event, appellee was not entitled to uninsured benefits because she did not meet the definitions of a person eligible to receive those benefits under the language of the policy. An arbitration hearing held on May 10, 1993 resulted in a finding in favor of appellee in the amount of $6500 on her claim for uninsured motorist benefits. State Farm appealed and a *de novo* non-jury trial was convened on January 11, 1994.

On March 15, 1994, the court entered its order granting appellee a $6000 recovery in uninsured motorist benefits. In it's accompanying opinion, the court stated that although

appellee was not entitled to benefits under the clear language of the policy, the court nonetheless felt mandated to award her those benefits based upon this Court's holding in *Ector v. Motorists Insurance Companies*, 391 Pa.Super. 458, 571 A.2d 457 (1990), *allocatur denied*, 525 Pa. 646, 581 A.2d 572 (1990). This appeal follows and requires us to revisit our holding in *Ector, supra*. Because we find that the decision in *Ector* has been limited by a subsequent *en banc* decision by this Court, we reverse.

In *Ector*, an uninsured pedestrian was struck and injured by an insured vehicle which had been stolen by an uninsured driver. The insurer denied the pedestrian's claim for uninsured motorist benefits. On appeal, the pedestrian argued that this Court's decision in *Prudential Property and Cas. Ins. Co. v. Falligan*, 335 Pa.Super. 195, 484 A.2d 88 (1984), was controlling. In *Falligan*, we upheld the recovery of uninsured motorist benefits by an uninsured pedestrian who was injured by an insured auto driven by the insured's son without permission.

We initially note that *Falligan* was decided at a time when automobile insurance policies issued in this Commonwealth were governed by the No–Fault Act, a statutory scheme which has since been repealed. Contracts for automobile insurance are now governed by the Motor Vehicle Financial Responsibility Law (MVFRL). In *Falligan*, the court relied on the No–Fault Act's articulated purpose of providing "maximum feasible restoration" to require insurers to provide uninsured motorist benefits to uninsured injured persons.[1]

On appeal, the *Ector* court agreed that *Falligan* was controlling. A three-judge panel of this Court noted that the MVFRL does not contain any policy language analogous to the "maximum feasible restoration" language contained in the

---

1. The now-defunct No–Fault Act provided in pertinent part:
   (a) Findings.—The General Assembly hereby finds and declares that:
   (3) the maximum feasible restoration of all individuals injured and compensation of the survivors of all individuals killed in motor vehicle accidents on Commonwealth highways ... is essential to the humane and purposeful functioning of commerce ...
   40 P.S. § 1009.102(a)(3).

No–Fault Act. Nonetheless, the panel concluded that because the MVFRL is a financial responsibility act remedial in nature, it must be liberally construed. Therefore, the panel held that the MVFRL was "sufficiently analogous to require this court to follow our decision in *Falligan*." *Ector*, 391 Pa.Super. at 466, 571 A.2d at 461.

However, since *Ector* was decided, an *en banc* panel of this Court, in *Jeffrey v. Erie Ins. Exchange*, 423 Pa.Super. 483, 621 A.2d 635 (1993), *allocatur denied*, 537 Pa. 651, 644 A.2d 736 (1994), limited *Ector's* scope, holding that the principle of "maximum feasible restoration" no longer exists in Pennsylvania law.

We note that this court's decision in *Ector*, [citation omitted], recognizes that the "maximum feasible restoration" principle was confined to the No–Fault Act and [has] not been carried over into the MVFRL, which contains no Legislative Finding section.

We disagree, however, with any implication in *Ector* that our responsibility to "liberally construe" the ... MVFRL is as broad a judicial mandate to effectuate coverage as was the "maximum feasible restoration" principle in the now defunct No–Fault Act.

*Jeffrey*, at 495 n. 5, 621 A.2d at 641 n. 5.

Moreover, we have recently noted that one of the principles behind the enactment of the MVFRL was the desire to bring down the high cost of automobile insurance premiums and that the MVFRL does not, therefore, prohibit "non-permissive use" exclusions in automobile insurance policies issued in this Commonwealth. *Nationwide Mut. Ins. Co. v. Cummings*, 438 Pa.Super. 586, 652 A.2d 1338, 1343 (1994). In *Cummings*, appellant maintained that as an innocent uninsured victim injured while a passenger in a stolen vehicle, he was entitled to uninsured motorist benefits under the reasoning provided by *Ector*. We disagreed, following the reasoning set forth in *Jeffrey, supra*. We held:

[A]ppellant's reliance on *Ector v. Motorists Ins. Co., supra*, is misplaced as our decision in that case has been limited by

a subsequent decision of an *en banc* panel of this Court, and is therefore not dispositive of the instant appeal.

*Cummings,* at 597–598, 652 A.2d at 1344.

In the case *sub judice,* it is clear that appellee did not fit the criteria required to be eligible for recovery of uninsured motorist benefits under the language of the policy.[2] She cannot overcome that deficiency by reliance on the theory of "maximum feasible restoration" as that principle no longer exists in Pennsylvania jurisprudence. Therefore, the order granting her recovery of uninsured motorist benefits in reliance on the transcendent hegemony of that doctrine was error. We reverse and vacate the judgment.

Order reversed. Judgment vacated. Jurisdiction relinquished.

OLSZEWSKI, J., files a dissenting opinion.

OLSZEWSKI, Judge, dissenting:

Since we believe that the trial court properly relied on *Ector v. Motorists Insurance Companies,* 391 Pa.Super. 458, 571

---

**2.** The applicable section of Raymond Lare's State Farm insurance policy which addresses uninsured and underinsured motorist coverage provides as follows:

Who Is An Insured

Insured—means the person or persons covered by uninsured motor vehicle and underinsured motor vehicle coverage.

This is:

1. The first person named in the declarations;
2. His or her spouse;
3. Their relatives; and
4. Any other person while occupying;

    a. Your car, a temporary substitute car, a newly acquired car, or a trailer attached to such car. Such vehicle has to be used within the scope of the consent of you or your spouse; or

    b. a car not owned by you, your spouse or any relative, or a trailer attached to such car. It has to be driven by the first person named in the declarations or that person's spouse and within the scope of the owner's consent.

    Such other person occupying a vehicle used to carry persons for a charge is not an insured.

5. any person entitled to recover damages because of bodily injury to an insured under 1 through 4 above.

A.2d 457, *allocatur denied,* 525 Pa. 646, 581 A.2d 572 (1990), we must respectfully dissent.

In *Ector,* this Court allowed an uninsured pedestrian, who was struck by a stolen car, to recover uninsured motorist benefits after finding that the policy behind the MVFRL was analogous to the "maximum feasible restoration" policy of the No–Fault Act. *Id.* at 465, 571 A.2d at 461. In *Jeffrey v. Erie Insurance Exchange,* 423 Pa.Super. 483, 621 A.2d 635 (1993), *allocatur denied,* 537 Pa. 651, 644 A.2d 736 (1994), an *en banc* panel rejected this underlying policy rationale and therefore limited *Ector.* The *Jeffrey* panel wrote:

> We disagree, however, with any implication in *Ector* that our responsibility to "liberally construe" the UMCA and the MVFRL is as broad a judicial mandate to effectuate coverage as was the "maximum feasible restoration" principle in the now defunct No–Fault Act.

*Id.* at 495 n. 5, 621 A.2d at 641 n. 5. Similarly, in *Nationwide Mutual Insurance Company v. Cummings,* 438 Pa.Super. 586, 652 A.2d 1338 (1994), this Court distinguished *Ector* and sought to further limit its holding. Despite these limitations, however, no court has expressly overruled *Ector.*

Since *Ector* has not been expressly overruled, we agree with the trial court that it controls and allows for recovery in this case. Like the plaintiff in *Ector,* the plaintiff here was an uninsured pedestrian struck by a stolen car. The majority tries to avoid this result by focusing on the fact that the maximum feasible restoration theory no longer exists. In *Ector,* however, the court did not rely on the theory of maximum feasible restoration. Instead, it relied on a liberal construction theory which the court found closely analogous to maximum feasible restoration. While this liberal construction theory has been severely limited by later cases, it is still a viable theory of recovery under the factual scenario presented in *Ector.*

We recognize that the *Ector* decision is often criticized. In this case, the trial court expressed its disagreement with the rationale of *Ector* and invited the appellate courts to reexam-

ine the decision. The trial judge recognized, however, that `Ector` was still binding precedent which he was not free to ignore. Like the trial court, we are constrained by *Ector* to allow recovery in this case, and therefore we would affirm the order below.