## Prudential Property and Casualty Insurance Company v. Ziatyk

C.P. of Lehigh County, no. 98-C-1678.

*Howard Wishnoff,* for plaintiff.
*Jeffrey P. Fritz,* for defendant.

BLACK, *J.,* December 27, 1999—Plaintiff, Prudential Property and Casualty Insurance Company, seeks an order from this court declaring that defendant, Helen S. Ziatyk, is barred from recovering underinsured motorist benefits as a result of a motor vehicle accident that occurred on August 26, 1996. The action has been brought

pursuant to the Uniform Declaratory Judgment Act, 42 Pa.C.S. §7531 et seq.

At a non-jury trial, the parties submitted a joint stipulation of facts and requested the court to decide the issue on the basis of that stipulation. The stipulated facts are as follows:

Prudential issued an automobile liability insurance policy to Donald Ziatyk Sr., the husband of defendant, Helen S. Ziatyk. The policy included UIM benefits under conditions set forth in the policy. The policy form had been submitted to and approved by the insurance commissioner of the Commonwealth of Pennsylvania.

On August 26, 1996, Mrs. Ziatyk suffered personal injuries as a result of a motor vehicle accident while she was a passenger in a U-Haul truck operated by her husband. The truck had a load capacity in excess of one ton. Mr. Ziatyk had rented the truck from U-Haul. The rental agreement provided that the lessor would be responsible for motor vehicle liability insurance in the amount required by the minimum financial responsibility law of the state where an accident occurs, in this case $15,000. The rental agreement did not permit Mr. Ziatyk to purchase uninsured or underinsured motorist coverage. It specifically provided: "Uninsured and/or underinsured motorist coverage is not provided, except where required by law."[1]

Mrs. Ziatyk made a claim against the tort-feasor, her husband. This claim was settled for $15,000, representing the limit of the liability insurance coverage provided by U-Haul. Mrs. Ziatyk then presented a claim to Prudential for UIM benefits under the motor vehicle insur-

---

1. Rental agreement, exhibit B to joint stipulation of facts.

ance policy issued by Prudential to her husband on his automobiles. Prudential has denied UIM coverage.

Prudential contends that its policy provided UIM benefits to Mrs. Ziatyk only where she was a passenger in a "car" or where she was a pedestrian struck by a motor vehicle. Mrs. Ziatyk claims that the policy language is broad enough to cover her while a passenger in the U-Haul truck; and if not, that the insurance policy violates the public policy of this Commonwealth as expressed in the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa.C.S. §1701 et seq.

For the reasons stated below, we conclude that Mrs. Ziatyk is not entitled to UIM benefits under the terms of the Prudential insurance policy. We also find that the preclusion of such benefits in the circumstances of this case does not violate the public policy of this Commonwealth. Therefore, we find in favor of Prudential on its claim for declaratory relief.

## I. THE TERMS OF THE PRUDENTIAL POLICY

In determining whether a claim falls within the coverage of an insurance policy, we must focus on the language of the policy and ascertain the reasonable expectations of the insured based on this policy language. See *Lebanon Coach Co. v. Carolina Casualty Insurance Co.,* 450 Pa. Super. 1, 9, 675 A.2d 279, 283 (1996), *allocatur denied,* 546 Pa. 695, 687 A.2d 378 (1997); *Koenig v. The Progressive Insurance Co.,* 410 Pa. Super. 232, 236, 599 A.2d 690, 691-92 (1991). The insurance policy is to be read as a whole; individual parts of the policy are not to be read in isolation. See *Curbee Ltd. v. Rhubart,* 406 Pa. Super. 505, 509, 594 A.2d 733, 735 (1991), *allocatur denied,* 529 A.2d 649, 602 A.2d 859 (1992) (exclusionary language of insurance contract must be construed

in the context of the whole contract). When the policy language is clear and unambiguous, the court should give effect to the language of the contract. *Id.* On the other hand, where a policy provision is ambiguous, the court must construe the language in favor of the insured and against the insurer, which drafted the document. See *Warner v. Continental/CNA Insurance Companies,* 455 Pa. Super. 295, 688 A.2d 177 (1996), *allocatur denied,* 548 Pa. 660, 698 A.2d 68 (1997).

In the present case, it is undisputed that Mrs. Ziatyk was an insured person under the insurance policy in question. The dispute arises from the fact that she was a passenger in a rented U-Haul truck when she was injured. The portion of the policy that deals with UIM benefits provides that an insured may obtain such benefits only in the following circumstances:

*"In Your Car (includes a substitute car)*

*"You* and a *resident relative* are insured while using *your car* or a substitute *car* covered under this part . . .

*"In A Non-Owned Car*

*"You* and a *resident relative* are insured while using a non-owned car. The owner must give permission to use it. It must be used in the way intended by the owner.

*"Hit By A Motor Vehicle*

*"You* and a *resident relative* are insured if hit by an underinsured *motor vehicle* while a pedestrian. . . ."

The policy defines a "car" in this manner:

"A *car* is a private passenger motor automobile, station wagon, jeep-type, or van with four wheels which is designed for use mainly on public roads. A pickup truck with four or six wheels and a load capacity of one ton or less is also a *car.*"

Clearly, a U-Haul truck with a load capacity exceeding one ton is not a "car" as that term is defined in the

insurance policy. Nor can it be said that an insured would have a reasonable expectation that such a vehicle would be considered a "car." Therefore, Mrs. Ziatyk is not eligible for UIM benefits under the terms of the Prudential policy.

Mrs. Ziatyk argues that the introductory language in part 5 of the policy, which is the part dealing with UIM benefits, suggests that there might be such coverage and creates an ambiguity. The specific language Mrs. Ziatyk refers to, which appears at the very beginning of part 5 of the policy, is as follows:

"If you have coverage (see the declarations), we will pay up to our limit of liability for bodily injury that is covered under this part when an insured (whether or not occupying a car) is struck by an underinsured motor vehicle." (parentheses in original)

Mrs. Ziatyk focuses on the parenthetical phrase "whether or not occupying a car" as indicative of an intent to provide coverage even if the insured was occupying a truck. However, the preceding language of this introductory sentence provides that Prudential will pay for bodily injury "that is covered under this part." The policy then continues to explain what injuries are "covered under this part." These injuries include only those incurred while the insured is occupying an insured car, a substitute car, or a non-owned car with the permission of the owner, or while the insured is a pedestrian struck by a motor vehicle. Part 5 of the policy must be read as a whole, and any reasonable insured doing so would have to conclude that there is no UIM coverage provided when the insured is occupying a truck. The sentence focused on by Mrs. Ziatyk obviously is not intended to expand coverage, but is merely a general introductory statement to the coverage that is then specifically described.

Given the unambiguous language of part 5 of the policy, we must conclude that Mrs. Ziatyk is not covered for UIM benefits under the terms of the Prudential policy for injuries sustained while a passenger in a truck. "[A]n insured may not complain that his or her reasonable expectations were frustrated by policy limitations which are clear and unambiguous." *St. Paul Mercury Insurance Co. v. Corbett,* 428 Pa. Super. 54, 59, 630 A.2d 28, 30 (1993). (citation omitted)

## II. PUBLIC POLICY

Mrs. Ziatyk also argues that the provisions in the Prudential insurance policy precluding UIM coverage for her should be declared invalid as contrary to public policy. Even a clear and unambiguous contract provision cannot be given its plain meaning if to do so would be contrary to a clearly expressed public policy. *Antanovich v. Allstate Insurance Co.,* 507 Pa. 68, 76, 488 A.2d 571, 575 (1985). However, it is only in the rarest of cases that public policy notions will be allowed to defeat the effect of clearly worded contract language. The public policy must be a "dominant public policy," not merely a vague goal, if the plain meaning of insurance policy is to be circumvented. See *Hall v. Amica Mutual Insurance Co.,* 538 Pa. 337, 347, 648 A.2d 755, 760 (1994).

"It is only when a given public policy is so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it, that a court may constitute itself the voice of the community in so declaring [that the contract is against public policy]." *Eichelman v. Nationwide Insurance Co.,* 551 Pa. 558, 563, 711 A.2d 1006, 1008 (1998) (citing *Mamlin v. Genoe,* 340 Pa. 320, 325, 17 A.2d 407, 409 (1941));

accord *Windrim v. Nationwide Insurance Co.,* 537 Pa. 129, 135-36, 641 A.2d 1154, 1157 (1994). Only a "dominant public policy" justifies "the invalidation of a contract as contrary to that policy." *Eichelman,* 551 Pa. at 563, 711 A.2d at 1008.

Unfortunately, public policy, like beauty, is often in the eye of the beholder. This is illustrated by the recent Superior Court decision in *Burstein v. Prudential Property and Casualty Co.,* 742 A.2d 684 (Pa. Super. 1999), involving the "regularly used non-owned vehicle" exclusion. The nine judges of the Superior Court who heard that case en banc issued three separate opinions, each of which was supported by only three members of the court. The lead opinion invalidated the exclusion as violative of public policy, holding that there were several competing policies to be weighed and balanced against each other, with the policies in favor of coverage prevailing.[2] The dissenting opinion found the exclusion valid, stating that there was only a single relevant public policy, namely legislative concern for the increasing cost of insurance. A third opinion, concurring and dissenting, rejected the reasoning in both of the other opinions; it invalidated the exclusion on the ground that the purpose of the exclusion, which was to prevent an insured from regularly driving two or more vehicles for the price of one policy, did not apply to the specific facts of that case. All this is very confusing to a mere trial judge.

---

2. The opinion identifies the policies favoring coverage as these: (1) the MVFRL was to provide a liberal compensation scheme of UM/UIM benefits with the greatest possible protection to injured claimants, (2) it is in the public's best interest for insurance companies to provide UM/UIM coverage, and (3) UM/UIM coverage is first-party coverage and therefore follows the person, not the vehicle.

Obviously, much if not most legislation is a compromise that takes into account a number of competing goals and considerations. The original impetus for UM/UIM coverage was a policy favoring protection for persons injured by uninsured or underinsured motorists. This coverage was later made optional because of concern over the increasing cost of automobile insurance. As stated in *Paylor v. Hartford Insurance Co.,* 536 Pa. 583, 587, 640 A.2d 1234, 1235 (1994):

"The repeal of the No-Fault Act and the enactment of the MVFRL reflected a legislative concern for the spiraling consumer cost of automobile insurance and the resultant increase in the number of uninsured motorists driving on public highways. The legislative concern for the increasing cost of insurance is the public policy that is to be advanced by statutory interpretation of the MVFRL. This reflects the General Assembly's departure from the principle of 'maximum feasible restoration' embodied in the now defunct No-Fault Act." See also, *Donnelley v. Bauer,* 553 Pa. 596, 606, 720 A.2d 447, 452 (1998); *Rump v. Aetna Casualty & Surety Co.,* 551 Pa. 339, 345, 710 A.2d 1093, 1096 (1998).

The shift from the concept of "maximum feasible restoration" to the Supreme Court's current focus on the need for controlling insurance costs has been recognized in many court decisions. The Pennsylvania appellate courts have frequently upheld insurance policy provisions limiting uninsured motorist and UIM coverage. See *e.g., Eichelman v. Nationwide Insurance Co.,* 551 Pa. 558, 711 A.2d 1006 (1998) (approving exclusion for family member in household with uninsured vehicle); *Hall v. Amica Mutual Insurance Co.,* 538 Pa. 337, 648 A.2d 755 (1994) (approving territorial limitation); *Paylor v. Hartford Insurance Co.,* 536 Pa. 583, 640 A.2d 1234

(1994) (approving exclusion for non-insured vehicles owned or furnished for regular use of insured or family member); *Caron v. Reliance Insurance Co.,* 703 A.2d 63 (Pa. Super. 1997) (approving exclusion limiting employer's UIM coverage to specific cars owned by employer); *St. Paul Mercury Insurance Co. v. Corbett,* 428 Pa. Super. 54, 630 A.2d 28 (1993) (approving "used for hire" exclusion limiting UM coverage to specific antique automobile); *Frazier v. State Farm Mutual Automobile Insurance Co.,* 445 Pa. Super. 218, 665 A.2d 1 (1995) (approving "non-permissive use" exclusion to deny UM benefits to uninsured pedestrian from insurer of stolen vehicle being driven by the thief); *Nationwide Mutual Insurance Co. v. Cummings,* 438 Pa. Super. 586, 652 A.2d 1338 (1994) (approving "non-permissive use" exclusion, thereby preventing passenger from recovering UM benefits from the insurer of stolen vehicle being driven by the thief, even though the passenger was innocent and unaware of the theft); *Marino v. General Accident Insurance Co.,* 416 Pa. Super. 1, 610 A.2d 477 (1992) (approving exclusion of UM/UIM benefits where insured vehicle used to transport persons or goods for a fee).

We also note that the Pennsylvania insurance commissioner approved the form of the insurance policy at issue.[3] Although this approval "does not per se establish the validity of the policy," it is to be considered a "significant factor" in assessing the validity of the contract language. See *Hall v. Amica Mutual Insurance Co.,* 538 Pa. 337, 347, 648 A.2d 755, 760 (1994); *Insurance Co. of North America v. Hippert,* 354 Pa. Super. 333, 338, 511 A.2d 1365, 1367 (1986).

3. An insurance company must obtain approval of the policy form from the insurance commissioner prior to selling the policy. 40 P.S. §477(b).

To summarize, the plain meaning of an insurance policy may be circumvented only by a "dominant public policy;" in interpreting the MVFRL, the Supreme Court has placed primary emphasis on the public policy of containing insurance costs; numerous appellate court decisions have applied this policy of cost containment to uphold UM/UIM coverage limitations; and the Pennsylvania insurance commissioner has approved the form of the insurance policy at issue. For all of these reasons, we hold that Prudential's failure to provide UIM coverage for Mrs. Ziatyk while she was a passenger in a U-Haul truck does not contravene public policy.

## ORDER

Now, December 27, 1999, after non-jury trial, the court finds in favor of plaintiff, Prudential Property and Casualty Insurance Company, against the defendant, Helen S. Ziatyk, and declares that plaintiff is not responsible for providing underinsured motorist benefits to defendant for injuries sustained by her on August 26, 1996, while a passenger in a U-Haul truck.