**MOTORISTS MUTUAL INSURANCE COMPANIES, Plaintiff,**

v.

**GREAT LAKES LABORATORIES, INC., William S. Moller, Michael Moller, Christopher Salchak, and Ernest H. Wollesen, Administrator of the Estate of Ernest E. Wollesen, Defendants.**

**Civ. A. No. 87–305 ERIE.**

United States District Court,
W.D. Pennsylvania.

June 16, 1988.

William J. Schaaf, Eugene C. Sundberg, Marsh, Spaeder, Baur, Spaeder & Schaaf, Erie, Pa., for plaintiff, Motorists Mut. Ins. Companies.

John M. Wolford, Erie, Pa., for defendant, Ernest H. Wollesen.

Joseph A. Yochim, Erie, Pa., for defendant, Great Lakes Laboratories, William Moller and Michael Moller.

Wayne G. Johnson, Erie, Pa., for defendant, Christopher Salchak.

## OPINION

GERALD J. WEBER, District Judge.

Plaintiff Motorists Mutual Insurance Companies is seeking a declaratory judgment that under the terms of an insurance policy issued to defendant Great Lakes Laboratories, it owes no coverage for claims arising out of an auto accident. The case is currently before us upon plaintiff's motion for summary judgment.

### FACTS

On October 1, 1985 plaintiff issued an automobile insurance policy to defendant Great Lakes. The policy listed William Moller (President) and Tim Ekstrom (Vice President) under the heading "driver description." The covered vehicles included a 1983 Renault which was purchased by William Moller for his son Michael's personal use. Michael was a student at Alliance College, and kept the car at his apartment near school, often using it to travel home to Erie, Pennsylvania on weekends. Michael was instructed by his father that he was not allowed to let anyone else drive it, and prior to December 6, 1986, Mr. Moller was only aware of one occasion in which Michael had. Upon learning of it, he again informed Michael that he was not to let anyone else drive the car.

In the early morning hours of December 6, 1986, Michael along with Christopher Salchak and Ernest E. Wollesen were at a party at a Red Roof Inn just outside the city of Erie. Wollesen asked for a ride to an after-hours establishment called "Pap's A.M." Michael, who had signed for the room at the Red Roof Inn, gave Salchak the keys to the Renault and asked him to give Wollesen a ride and to come right back. At approximately 3:00 A.M., on the way there, however, Salchak went off the roadway and hit a telephone pole. Wollesen died from injuries sustained in that crash.

### DISCUSSION

The sole issue presented for our review is whether the policy issued to Great Lakes was in full effect at the time of the December 6, 1986 accident. Plaintiff alleges that it was not, due to the fact that the driver, Christopher Salchak operated the car without the permission from the "named insureds". In support of their position, plaintiff relies upon the language contained in "Section A" of the policy, entitled "Basic Automobile Liability Insurance," which states in pertinent part that:

1. COVERAGE A–BODILY INJURY LIABILITY

   COVERAGE B–PROPERTY DAMAGE LIABILITY

   The company will pay on behalf of the insured all sums which the *insured* shall become legally obligated to pay as damages because of

   *bodily injury or*
   *property damage*

   .    .    .    .    .

III. PERSONS INSURED

Each of the following is an *insured* under this insurance to the extent set forth below.

   .    .    .    .    .

(c) any other person while using an *owned automobile* ... with the permission of the *named insured*, provided his actual operation ... is within the scope of such permission ...

Emphasis in original.

Defendants first argue that the insurance policy issued by plaintiff is ambiguous in its definition of the word "insured", in that it contains varied and incongruous definitions. We have carefully examined the policy and find no ambiguity. The policy is divided into four distinct and separate sections, each containing its own definitions for terms incorporated therein. The other definitions of "insured" cited by defendants are either contained in one of these separate sections or in an endorsement thereto. They clearly do not pertain to the "Basic Automobile Liability Insurance" (B.A.L.I.) section with which we are concerned. Therefore, we conclude as a matter of law that the definition of "insured" relied upon by plaintiff clearly controls any claim for B.A.L.I. coverage.

None of the defendants herein dispute the fact that Salchak never received the express permission of Mr. Moller or any "named insured" to drive the car in question. In fact there has been no evidence presented that Mr. Moller ever had any conversations or contact with Salchak at all. Nevertheless, it is argued that Salchak did receive "implied permission from the named insured based upon the course of conduct of Mr. Moller."

■ Permissive use of an automobile may be implied from a course of conduct in which the parties have mutually acquiesced. *Federal Kemper Insurance Co. v. Neary*, 366 Pa.Super. 135, 530 A.2d 929 (1987), and *Donegal Mutual Insurance Co. v. Eyler*, 360 Pa.Super. 89, 519 A.2d 1005 (1987).

[T]he critical question will always be whether the named insured said or did something that warranted the belief that the ensuing use was with his consent. There must be "a connection made" with the named insured's own conduct; proof of "acts, circumstances and facts, such as the continued use of the car," will be

insufficient "unless they attach themselves in some way to the acts" of the named insured.

*Belas v. Melanovich*, 247 Pa.Super. 313, 372 A.2d 478, 484 (1977), quoting *Beatty v. Hoff*, 382 Pa. 173, 114 A.2d 173, 174 (1955).

■ In support of their claim of implied permission, the defendants rely heavily on the fact that Michael Moller referred to the car as being his own, and appeared to Salchak to have unlimited use and ownership. Furthermore, they argue that Salchak had driven the car on many occasions with Michael's permission. We find these facts to be wholly irrelevant to the issue of implied consent. There is no evidence whatsoever that Mr. Moller was aware of either Michael's representations as to the ownership of the car, or that Michael had allowed Salchak to drive the car on previous occasions. Proof of Michael's acts and representations and Salchak's previous use of the car are simply insufficient unless they attach themself in some way to the acts of Mr. Moller. Here there has been no such connection made, and Mr. Moller cannot be said to have thereby acquiesced in Salchak's use of the car.

The evidence presented reveals only the one instance in which Mr. Moller was aware that Michael had allowed a third party to drive the car. Upon learning of that, Mr. Moller reiterated his instructions to his son that no one else was to drive the car. Defendants argue that Mr. Moller's failure on this one occasion to punish his son for disobeying his instructions as to the use of the car, constituted acquiescence in his son's loaning of the car. In arguing such, defendants are asking this Court to interfere in an area in which we most surely do not belong. We refuse to embark on a path of second guessing a parent's perogative to determine when and how a child should be disciplined, within legal bounds. Mr. Moller apparently felt that under the circumstances no discipline further than a reprimand and lecture were necessary. Mr. Moller's decision not to impose stricter discipline upon his son for one isolated instance of loaning out the car in violation of his instructions simply does not equate to

acquiescence in an unfettered use of the car by anyone his son might permit. Michael himself testified, at his Deposition, that despite his father's allegedly lax discipline, he knew that when he gave the car keys to Salchak he was disobeying his father's instructions. Obviously, therefore, Michael did not believe that the ensuing use was with his father's consent. Defendants have failed to show any conduct by Mr. Moller which would warrant a belief that Salchak's use of the car in the early morning hours of December 6, 1986 was with the "implied consent" of Mr. Moller. See *Volk v. Cacchione*, 395 Pa. 636, 150 A.2d 849 (1959); *Beatty v. Hoff*, 382 Pa. 173, 114 A.2d 173 (1955); *Federal Kemper Insurance Co. v. Neary*, 366 Pa.Super. 135, 530 A.2d 929 (1987); *Donegal Mutual Insurance Co. v. Eyler*, 360 Pa.Super. 89, 519 A.2d 1005 (1987); *Belas v. Melanovich*, 247 Pa.Super. 313, 372 A.2d 478 (1977); and *Helwig v. Esterly*, 205 Pa.Super. 185, 208 A.2d 10 (1965).

### CONCLUSION

We conclude as a matter of law, that any claim for coverage under the B.A.L.I. section of the automobile insurance policy issued by plaintiff to defendant Great Lakes Laboratories, is clearly controlled by the definition of "insured" contained in that section. Specifically, in order to qualify as an "insured" under the policy, Christopher Salchak had to have been operating the car with the permission of a named insured. Defendants have failed to present any evidence of any conduct by Mr. Moller, or any other named insured, which may reasonably be interpreted as conveying such permission either expressly or impliedly. Having found no genuine issue as to any material fact relevant to this point, we hold that plaintiff is entitled to summary judgment as a matter of law.

An appropriate order will follow.

### ORDER

AND NOW, this 16th day of June, 1988, IT IS ORDERED that Plaintiff's Motion for Summary Judgment is GRANTED, and declaratory judgment is hereby ENTERED

finding plaintiff not liable for claims for coverage arising out of the December 6, 1986 accident, under the Basic Automobile Liability Insurance Section of its policy issued to defendant Great Lakes.