**The HOME INSURANCE CO., Plaintiff,**

**v.**

**Racquel McGOVERN, Carl W. Notter, National Surety Company, and New Jersey Auto Sales, Defendants.**

**Civ. A. No. 93–0641.**

United States District Court, E.D. Pennsylvania.

Sept. 7, 1993.

Joseph G. Gibbons, Swartz, Campbell & Detweiler, Curtis P. Cheyney, III, Philadelphia, PA, for plaintiff.

Natalie Tull Greene, La Brum and Doak, Philadelphia, PA, for Raquel McGovern and New Jersey Auto Sales.

Leonard N. Ross, Ross & Goldstein, Lee Albert, Philadelphia, PA, for Carl Notter.

John W. Potkai, Post & Schell, P.C., Robert M. Britton, Philadelphia, PA, for Fireman's Fund Ins. Co.

### ORDER

KATZ, District Judge.

**AND NOW,** this 7th day of September, 1993, upon consideration of Motion for Summary Judgment of Defendant, National Surety Company, Plaintiff's Motion for Summary Judgment and Motion of Defendant, Carl W. Notter, for Summary Judgment for a Declaration of Coverage for Racquel McGovern and New Jersey Auto Sales in the Amount of $300,000.00, it is hereby **ORDERED** that the Plaintiff's and Defendant Notter's Motions are **GRANTED** and Defendant National Surety Company's Motion is **DENIED.**

### FACTS

On October 2, 1989, defendant Racquel McGovern was driving a Chevrolet Corvette with dealer tags issued to defendant New Jersey Auto Sales. The Corvette collided with defendant Carl W. Notter's car. As a result, Mr. Notter was seriously injured. Mr. Notter filed suit against Ms. McGovern in the Philadelphia Court of Common Pleas in December 1989. Defendant National Surety Company, defendant New Jersey Auto Sales' insurer, is defending Ms. McGovern in the state action.

The plaintiff, The Home Insurance Company, insured Mr. Notter under a policy that provides uninsured motorist and underinsured motorist coverage. The plaintiff seeks a declaration that 1) Ms. McGovern was covered by the New Jersey Auto Sales policy issued by National Surety Company, and 2) that it has no obligation to pay Mr. Notter under its policy for uninsured or underinsured motorists until National Surety Company pays their policy limits on behalf of Ms. McGovern.[1]

### DISCUSSION

#### Jurisdiction

██ National Surety asserts that this court lacks subject matter jurisdiction over this case because it is not ripe. Specifically, it asserts that because the plaintiff has not paid uninsured motorist benefits to Mr. Notter, there is not a true case or controversy before the court. Def. National Surety Mem. p. 8. National Surety maintains that the plaintiff does not seek to assert its own rights, but rather seeks a declaration of the legal rights and obligations that National Surety owes to Ms. McGovern. *Id.* p. 8–9.

---

1. Defendants McGovern and New Jersey Auto Sales have joined in the Plaintiff's Motion for Summary Judgment.

The plaintiff's complaint states a true case or controversy. The plaintiff seeks a determination of its present obligation and duties vis-a-vis one of its insured, Mr. Notter. Mr. Notter suffered serious injuries as a result of the accident. He notified the plaintiff of his claim against the plaintiff for underinsured motorist benefits. Compl. ¶ 19. The plaintiff seeks a declaration from this court that it does not owe Mr. Notter anything unless, and until, he recovers from National Surety the first $300,000 of any damages caused by the accident.

In response, National Surety argues that it does not owe Mr. Notter anything, or alternatively, only the first $15,000 of damages. Because the exact dollar value on Mr. Notter's injuries is presently unknown,[2] the plaintiff may have no obligation to pay Mr. Notter anything. If Mr. Notter receives a judgment in the ongoing state litigation of $300,000 or less damages, and if the plaintiff is successful in this litigation, then the plaintiff may recover only from National Surety, and not the plaintiff. Additionally, the resolution of the liability issues in the underlying state court action will not resolve the coverage issues presented in this federal action. Therefore, an actual, and not merely hypothetical controversy, exists as to the plaintiff's liability.

The case at bar is distinguishable from *Metropolitan Property & Liab. Ins. Co. v. Longenecker,* Civ. No. 81–2867, U.S.Dist. LEXIS (E.D.Pa. Oct. 7, 1983), *aff'd,* 738 F.2d 423 (3d Cir.1984), *cert. denied,* 469 U.S. 1019, 105 S.Ct. 435, 83 L.Ed.2d 361 (1984). In *Metropolitan,* the plaintiff insurance company conceded that it would have to pay its insured on their claim. The issue in *Metropolitan* centered around a *future* claim for indemnification against two other insurance companies. The issue in the case at bar is whether the plaintiff has a present obligation to pay Mr. Notter.

**2.** None of the parties have argued that Mr. Notter's damages are less than $15,000.

**3.** The record before the court does not contain the Home Insurance Company—Notter insurance policy. Therefore, this court cannot decide the issue of whether the uninsured/underinsured motorist claim must first go to arbitration. *See Nationwide Ins. Co. v. Patterson,* 953 F.2d 44, 46

### *Choice of Law*

■ The question arises in this case whether Pennsylvania or New Jersey substantive law should apply to the issues in this case. In answering this question, this court must apply Pennsylvania choice of law principles, since this suit was filed in Pennsylvania. *Blakesley v. Wolford,* 789 F.2d 236, 238 (3d Cir.1986). Pennsylvania's choice of law approach combines both the Restatement (Second) of Conflicts of Law (contacts establishing significant relationships) and "interest analysis" (qualitative appraisal of the relevant States' policies with respect to the controversy). *Id.* at 239.

National Surety asserts that New Jersey substantive law governs the issues in this case since the National Surety insurance policy was issued to a New Jersey resident. Def.Mem. p. 12. National Surety, however, does not undertake an analysis of how a Pennsylvania state court would answer the choice of law issue. Moreover, in the only case cited by National Surety for their assertion that New Jersey law governs, the parties agreed that Pennsylvania law governed the issues in that case. *Nationwide Mut. Ins. Co. v. Hampton,* 935 F.2d 578, 580 (3d Cir.1991). Additionally, National Surety asserts Pennsylvania substantive law controls the question of whether Ms. McGovern was an owner of the Corvette and whether the uninsured or underinsured motorist claims require arbitration.[3] *See* Def.Mem. p. II.C., p. 11 n. 2.

The plaintiff asserts that it is entitled to summary judgment regardless of which state's law is applies. *See* Pl.Mem. p. 14 n. 1.

### Characterization

A court must first characterize a problem before it can resolve a conflicts of law situation. While section 6[4] of the Restatement

(3d Cir.1991) (factors for determining whether an issue first must be submitted to arbitration).

**4.** Restatement (Second) of Conflict of Laws § 6, Choice-of-Law Principles, provides:

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

lays out general principles to be applied by courts, different state's laws presumptively apply depending upon whether the issue before this court is consider a tort action or an action on an insurance contract.

The Restatement (Second) of Conflict of Laws establishes the following general principles to be applied in tort actions:

§ 145. The General Principle

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

§ 146. Personal Injuries

In an action for a personal injury, the local law of **the state where the injury occurred** determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

Restatement (Second) of Conflicts of Law § 145–46 (1971) (emphasis added).

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

In contrast, Section 193 of the Restatement, which governs insurance contracts, provides as follows:

The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by **the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy,** unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.

Restatement (Second) of Conflicts of Law § 193 (1971) (emphasis added).

### Analysis

 Both Pennsylvania and New Jersey have both strong contacts and strong interests in the outcome of this case. Pennsylvania's contacts and interests include: being the site of the accident, being the domiciliary of the victim, the driver, and the title-holder, being the state where both cars involved in the accident were garaged and titled, assuring that Pennsylvania accident victims injured in Pennsylvania are fully compensated, interpreting insurance contracts (The Home Insurance Co.—Notter policy) made in the state. New Jersey's contacts and interests include: being the state where the New Jersey Auto Sales insurance contract was made and the principal location of the insured risk; being the state of employment of Mr. McGovern; being the licensing state of the dealer tags; maintaining the integrity of insurance contracts (National Surety—New Jersey Auto Sales) made in the state. Therefore, a Pennsylvania state court could justify the ultimate result of a hypothetical conflict analysis undertaken in this case regardless of which state's law is applied.

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

■ Nevertheless, this court concludes that after a full conflicts analysis, most Pennsylvania state courts would conclude that Pennsylvania has the more relevant and significant relationships, contacts and interests, and therefore, Pennsylvania substantive law should control. *Cf. Harleysville Ins. Co. v. Crum & Forster Personal Ins.*, 246 N.J.Super. 503, 588 A.2d 385, 387 (App.Div.1990). It is worth noting, however, that Pennsylvania courts will apply New Jersey law when it does not contradict Pennsylvania's public policy and it in fact furthers Pennsylvania's policy of awarding full victim compensation. *See Smith v. Firemens Ins. Co. of Newark*, 404 Pa.Super. 93, 590 A.2d 24, 27 (Pa.Super.Ct.1991), *appeal den.*, 529 Pa. 669, 605 A.2d 334 (1992).

### Was Ms. McGovern an Owner?

National Surety asserts that, if Ms. McGovern was the "owner" of the automobile that collided with Mr. Notter's car, then it is not liable for coverage pursuant to provision (b)(1) of Section D. This clause provides as follows:

> b. Anyone else is an insured while using with your permission a covered auto except:
>
> (1) the owner of a covered auto you hire. or borrow from one of your employees or a member of his or her household.

Ms. McGovern did not hold title to the Corvette at the time of the accident. Her husband held sole title. Stipulation, ¶ 4. However, National Surety asserts Ms. McGovern must be "construed as an owner" of the car for the purposes of interpreting the insurance policy. Def. National Surety Mem. p. 16. Therefore, National Surety argues that its policy excludes Ms. McGovern from coverage, because she is the constructive owner of the Corvette. *Id.* p. 28.

■ Courts must give the words in an insurance policy their plain and ordinary meaning if those words are clear and unambiguous. *Pacific Indem. Co. v. Linn*, 766 F.2d 754, 760–61 (3d Cir.1985). Any ambiguity in the policy must be resolved against National Surety because it drafted the agreement. *Nationwide Mut. Ins. Co. v. Patterson*, 953 F.2d 44, 47 (3d Cir.1991). The interpretation of an exclusion is a policy of insurance is a question of law for the court. *Curbee, Ltd. v. Rhubart*, 406 Pa.Super. 505, 594 A.2d 733, 735 (1991), *appeal den.*, 529 Pa. 649, 602 A.2d 859 (1992). An insurance company bears the burden of proving that a policy exclusion provision is applicable to a particular case. *Myrtil v. Hartford Fire Ins. Co.*, 510 F.Supp. 1198, 1201 (E.D.Pa.1981) (citing *Daburlos v. Commercial Ins. Co.*, 521 F.2d 18, 24 (3d Cir.1975)). Additionally, when an insurance company attempts to invoke an exception to coverage, that exception is effective against the insured only if it is "clearly worded." *Linn*, 766 F.2d at 761. National Surety's tortured attempt to define Ms. McGovern as a "owner" of the car in this case fails the clearly worded test. Moreover, applying the common meanings of the words "borrowed" and "hired," no evidence suggests that New Jersey Auto Sales "borrowed" or "hired" the automobile from the McGoverns. *See* Stipulation ¶ 10.

The cases cited by National Surety are also unpersuasive. National Surety cites *Allen v. Merriweather*, 413 Pa.Super. 410, 605 A.2d 424 (1992), *appeal den.*, 533 Pa. 622, 620 A.2d 489 (1993), for the proposition that the non-title holding spouse may be treated as a owner for purposes of the section 1714[5] of Pennsylvania's Motor Vehicle Financial Responsibility Law (MVFRL), 75 Pa.C.S.A. § 1701, et seq. In *Allen*, a husband sought to recover first party benefits after suffering injuries as a result of an accident which occurred while he was driving an uninsured car titled in only his wife's name. The *Allen* court held that the husband was an owner of the car and therefore under the circumstances he could not recover first party benefits. The result in *Allen* is appropriate in light of purpose behind section 1714. That purpose is to require owners of registered vehicles to share the burden of insurance

---

5. This section prevents an owner of a currently registered motor vehicle from collecting first party benefits if that owner does not have financial responsibility. First party benefits are defined as "medical benefits, income loss benefits, accidental death benefits and funeral benefits." 75 Pa. C.S.A. § 1702.

before they could obtain benefits from the statute. *Bethea v. Pennsylvania Fin. Responsibility Assigned Claims Plan,* 407 Pa.Super. 57, 595 A.2d 122, 124 (1991). In other words, the statute prohibited a person from collecting benefits, unless he had the ability to provide them to another person. *Id.* These policy reasons, however, do not support construing a spouse as a owner for the purpose of determining whether to compensate an injured third party.

### Did Ms. McGovern not have permission?

 National Surety contends that since New Jersey Auto Sales did not own the motor vehicle in question, it was not capable of giving permission to Ms. McGovern to use it.[6] Mem. p. 21. National Surety cites no Pennsylvania or New Jersey cases in support of this contention. Its argument fails because New Jersey law provides that an insurance company cannot avoid liability by claiming that a motorist's use of the insured automobile exceeded the scope of authority granted by the insured. *Rao v. Universal Underwriters Ins. Co.,* 228 N.J.Super. 396, 549 A.2d 1259, 1262 (1988) (citing *Selected Risks Ins. Co. v. Zullo,* 48 N.J. 362, 225 A.2d 570 (1966)).

### Garage Operations

 Defendant Notter argues that summary judgment is appropriate because New Jersey Auto Sales gave Mr. McGovern use of the tags as part of its garage operations (ie. to drive the Corvette to New Jersey Auto Sales for sale). Mr. Notter asserts that there is insurance coverage pursuant to provision (b)(2) of Section D. This clause provides as follows:

b. Anyone else is an insured while using with your permission a covered auto except:

(2) Someone using a covered auto while he or she is working in a business of selling, servicing, repairing or parking or storing autos unless the business is your garage operations.

Garage operations are defined to "included all operations necessary or incidental to a garage business." It is not clear, and defendant Notter does not articulate how, even if Mr. McGovern's use of the tags to transport the Corvette to New Jersey Auto Sales was within "garage operation," this court can find as a matter of law that Ms. McGovern's use of the car was part of the "garage operations." Ms. McGovern's use of the car was unrelated to any operation of New Jersey Auto Sales' garage business.

### Was Ms. McGovern a "Customer" of New Jersey Auto Sales?

 The plaintiff asserts that Ms. McGovern was not a "customer" of New Jersey Auto Sales, but rather was a permissive user of a "covered auto." Pl.'s Mem. pp. 10, 12. The plaintiff asserts that the dealer tags were loaned to Mr. McGovern as a benefit of his employment with New Jersey Auto Sales. *Id.* p. 11. Additionally, it is asserted that Ms. McGovern lacked the "legal capacity" to transfer the title to New Jersey Auto sales and therefore could not be a customer.

. On the other hand, National Surety asserts that if Ms. McGovern was not an "owner" of the Corvette, then she was a customer of New Jersey Auto Sales.[7] National Surety argues that Mr. McGovern should be construed as a "customer" because he was going to sell the Corvette to New Jersey Auto Sales. Def. National Surety Mem. p. 27. It then argues that Ms. McGovern as the constructive owner[8] of the car could be construed as a "customer." *Id.* Additionally, it asserts that since Ms. McGovern was going to help her husband in sales transaction by driving to New Jersey she is a customer. *Id.*

Defendant National Surety does not cite any Pennsylvania or New Jersey cases supporting the proposition that either Mr. Mc-

---

6. New Jersey Auto Sales gave Mr. McGovern unrestricted use of the tags. Herman Dep. p. 37.

7. If as discussed below, the New Jersey Auto Sales insurance policy provides that if Ms. McGovern is a "customer," then since she has no other available insurance coverage, National Surety is liable under the policy up to the $15,-

000 compulsory law limits of Pennsylvania and New Jersey.

8. National Surety supports this conclusion of constructive ownership by citing its earlier argument that Ms. McGovern was an "owner" of the Corvette.

Govern or Ms. McGovern are properly characterized as customers of New Jersey Auto Sales. Both the plaintiff and National Surety cite Black's Law Dictionary's definition of customer:

> One who **regularly or repeatedly** makes purchases of, or has business dealings with, a tradesman or business. Ordinarily, one who has had **repeated** business dealings with another. A buyer, purchaser, consumer or patron.

BLACK'S LAW DICTIONARY 386 (6th ed. 1990); *see also Matthews v. Konieczny*, 515 Pa. 106, 527 A.2d 508, 513 (1987). The Pennsylvania Supreme Court attempted to define the word "customer" in *Matthews*. The *Matthews* court stated that "although a single exchange can qualify one as a 'customer,' the word connotes at least a capacity to regularly engage in transactions." *Matthews*, 527 A.2d at 513.

Under the Pennsylvania standard, Mr. McGovern could have been a customer of New Jersey Auto Sales in addition to being one of its employees.[9] The record shows that Mr. McGovern did buy a car from New Jersey Auto Sales in the past and that he planned to sell his Corvette back to it. However, nothing in the record shows that Ms. McGovern conducted a single transaction with New Jersey Auto Sales. Additionally, as discussed above, Ms. McGovern was not an owner of the Corvette. Ms. McGovern lacked the capacity to convey title of the Corvette to New Jersey Auto Sales.

The fact that Mr. McGovern may have been a New Jersey Auto Sales customer does not make his wife a customer. By way of analogy, if a neighbor of Mr. McGovern had agreed to help drive to New Jersey Auto Sales, that act would not have made the neighbor a New Jersey Auto Sales customer. Therefore, the fact that Ms. McGovern agreed to drive with her husband to New Jersey Auto Sales did not make her a New Jersey Auto Sales' customer.

### If Ms. McGovern was a customer, then the exclusion is unenforceable due to public policy

Alternatively, the plaintiff argues that even if Ms. McGovern was a customer of New Jersey Auto Sales, public policy "forbids an insured from purchasing greater bodily injury insurance protection for himself than he affords those whom are insured by the insured's negligence." Pls' Mem. p. 14. If Ms. McGovern is a "customer," then according to the New Jersey Auto Sales' policy since she has no other available insurance coverage, National Surety is liable under the policy up to the $15,000 compulsory law limits of Pennsylvania and New Jersey.

The New Jersey Auto Sales policy has three different levels of coverage based upon "Who is an insured." First, if the person who took out the policy is "the insured" then the full $300,000 of liability coverage applies. D.1.a. Second, if "the insured" is a customer with no other available insurance coverage, then liability coverage is limited to the Compulsory or Financial Responsibility Law limits of the state where the auto is principally garaged. Policy D.1.b.3(a). In this case, that limit is $15,000 in both Pennsylvania and New Jersey. This lower type of coverage provision is called a "step-down" provision. Third, if the insured is a customer with other available insurance coverage, then the policy states that there is coverage only to the extent that the other insurance coverage is less than the Compulsory or Financial Responsibility Law limits. Policy D.1.b.3(b).

In *Fryer v. Allstate Ins. Co.*, 392 Pa.Super. 418, 573 A.2d 225 (1990), the Pennsylvania Superior Court reviewed the validity of the third type of coverage (where a customer has other insurance coverage available). The court found this type of clause to be an unenforceable escape clause. *Id.* 573 A.2d at 227–28. The court concluded that the insurance policy in issue must be enforced as if the escape clause did not exist.

---

**9.** The plaintiff argues that New Jersey Auto sales allowed Mr. McGovern to use the plates as a benefit of his employment. The record supports the assertion that Mr. Herman gave Mr. McGovern auto tags privileges that he did not give anyone else. Herman Dep. pp. 38–41. However-

er, the record also shows that, as to the incident in question, Mr. Herman gave Mr. McGovern the tags on Friday with the understanding that Mr. McGovern would return the tags and consummate the sale of the Corvette on Monday. Herman Dep. p. 44.

*Id.* at 228. Therefore, under Pennsylvania law in this third type of case, the full liability coverage is available for the insured and for customers with other available insurance. *Automobile Underwriters v. Fireman's Fund Ins. Co.,* 874 F.2d 188, 193 (3d Cir.1989).

For customers with other insurance, only $15,000 of liability coverage may exist. However, this court can find no Pennsylvania case where a court examined the validity of step-down clauses.

■ The validity of step-down clauses have been addressed by New Jersey courts. In *Keystone Ins. Co. v. Atlantic Chrysler Plymouth, Inc.,* 167 N.J.Super. 353, 400 A.2d 872 (Law Div.1979), the customer of a car dealer got into an accident while test driving a car. The driver was covered by a family policy. The car dealer's insurance company sought to avoid full liability due via a step-down provision. New Jersey Superior Court's Law Division held that step down coverage was contrary to public policy and that if an insurance company offers coverage above the statutory minimums it could not selectively restrict those limits based on who was driving the automobile. *Id.* 400 A.2d at 876.

The *Keystone* decision was disagreed with by the New Jersey Superior Court's Appellate Division in *Rao v. Universal Underwriters Ins. Co.,* 228 N.J.Super. 396, 549 A.2d 1259, 1265 n. 3 (App.Div.1988). The *Rao* court upheld the validity of step down arrangements in a lease situation where the maximum liability coverage for a customer is the statutory minimum coverage.[10] The *Rao* court stated that it reaffirmed the court's conclusion in *General Accident Group of Ins. v. Liberty Mut. Ins. Co.,* 191 N.J.Super. 530, 468 A.2d 430 (App.Div.1983) (step-down provisions in lease situations does not violate public policy). The *General Accident* court, however, stated that it did not disagree with the *Keystone* decision. *Id.* 468 A.2d at 432. Rather it found that the distinction between the leased vehicle in the case before it and

customer situation in *Keystone* permitted different end results. *Id.*

The plaintiff asserts that the step-down clause in the New Jersey Auto Sales policy violates both 75 Pa.C.S.A. § 1736 and N.J.S.A. 17:28–1.1. Those two sections prevent an insured from providing greater uninsured/underinsured coverage for themselves and their additional insured, then that same insured provides for others injured through his negligence. *Wolgemuth v. Harleysville Mut. Ins. Co.,* 370 Pa.Super. 51, 535 A.2d 1145, 1147 n. 3 (1988), *appeal den.,* 520 Pa. 590, 551 A.2d 216 (1988). Specifically, the plaintiff asserts that under the New Jersey Auto Sales policy Ms. McGovern was entitled to the full $300,000 of uninsured motorist protection. However, persons injured by Ms. McGovern, like Mr. Notter, were only entitled to $15,000 of coverage. This coverage difference violates requirement of the both states automobile insurance laws. Therefore, the full $300,000 liability coverage must be provided for the negligent act of Ms. McGovern.

■ Based upon a review of the above cases, this court believes that both the Pennsylvania and New Jersey Supreme Court would find step-down clauses valid in long term automobile lease situations. However, these courts would hold this step-down clause invalid as a matter of public policy, in cases like the one at bar, where a customer merely drove a car for a short period of time such that during that period of use the customer would not normally be expected to obtain separate insurance.

Under Pennsylvania law if the step-down clause is invalid the policy should be read as if the clause did not exist. *Automobile Underwriters v. Fireman's Fund Ins. Co.,* 874 F.2d 188, 193 (3d Cir.1989). Therefore, National Surety is liable to pay the first $300,000 owed to Mr. Notter. *See Fryer v. Allstate Ins. Co.,* 392 Pa.Super. 418, 573 A.2d 225 (1990).

---

10. In *Rao,* the husband entered into a lease agreement with the lessor. The agreement clearly required the lessee to obtain his own insurance to protect himself and any permissive user. 549 A.2d at 1263. The lessees had obtained coverage up to $100,000. *Id.* at 1260. The question before the court was whether the lessee was entitled to the lessor's maximum coverage of $300,000 or the statutory minimum $15,000 provided for by the step-down provision. *Id.*

**670**

### *JUDGMENT*

**AND NOW,** this 7th day of September, 1993, it is hereby **ORDERED** that judgment is entered in favor of the plaintiff, The Home Insurance Company, defendants Racquel Mc-Govern, Carl W. Notter, and New Jersey Auto Sales, and against defendant National Surety Company.