**ALLSTATE INSURANCE COMPANY,**
**Plaintiff,**

v.

**Attoy DAVIS, et al., Defendants.**

**Civil Action No. 96–5067.**

United States District Court,
E.D. Pennsylvania.

Sept. 16, 1997.

Kevin R. McNulty, Thomas C. Zipfel, German, Gallagher & Murtagh, Philadelphia, PA, for Plaintiff.

Francis T. Flannery, Philadelphia, PA, for Defendants.

## MEMORANDUM

JOYNER, District Judge.

On July 16, 1996, Plaintiff Allstate Insurance Company ("Allstate") instituted this declaratory judgment action against Defendants Attoy Davis, Jamillah Harris, Nate Jones, Rashida King, and Darryl LaBrew. Allstate seeks a judgment declaring that it has no obligation, contractual or otherwise, to provide certain benefits to Defendants under an auto insurance policy it issued to Ms. Polly Anne Holland ("Holland"). Defendants Harris, Jones, King, and LaBrew failed to appear, answer, or otherwise defend this suit and default judgment was entered against them accordingly. Before the Court is Allstate's Motion for Summary Judgment against the lone remaining Defendant, Attoy Davis ("Davis"). For the foregoing reasons, the Motion is granted in favor of Allstate for Count II, the uninsured motorist provision, and denied for Count III, the first party medical and wage loss benefits provision.

## BACKGROUND

At all times relevant to this action, Holland owned a 1983 Honda Accord insured under an automobile insurance policy (the "Policy") issued by Plaintiff Allstate. Allstate is an Illinois corporation with its principal place of business in Northbrook, Illinois. All Defendants, including Davis, are citizens of Pennsylvania.

On the morning of November 16, 1994, Holland drove into her place of employment, the Willow Grove Naval Air Station, with an individual named Ernest Bernard ("Bernard"). Though she had known Bernard for approximately just one month, Holland gave Bernard permission to use her car to retrieve some personal items out of his van, which had broken down in Philadelphia. Bernard was supposed to return to pick Holland up from work when she got off at 4:00 p.m. When Holland loaned Bernard her car, she did not explicitly give Bernard permission to lend her car to anyone else, nor did she specifically prohibit him from doing so.

Bernard did not return to pick Holland up from work that day. At approximately 10:30 or 11:00 that evening, when Holland still had not heard from Bernard, she called the Plymouth Township Police and reported the car stolen. Around 3:00 a.m. the following morning, Holland received a phone call from the police notifying her that her car had been involved in an accident. The occupants of the car at the time of the accident were Defendants Davis, Harris, Jones, King, and LaBrew. Either LaBrew or Jones was driving the vehicle when the accident occurred and Davis was allegedly injured. Holland did not know any of the occupants of the car, nor had she ever met them.

Holland, who also did not know where Bernard lived or how to contact him, next heard from him on the morning of November 17th. When Bernard asked Holland if she knew where the car was, she informed him of the accident. According to Holland, Bernard then told her that the car keys had been stolen out of his pocket while he was intoxi-

cated the night before. Allstate has submitted no deposition testimony, affidavit, or other evidence containing any statement to this effect from Bernard himself. Allstate also has not submitted any police report or other evidence that Holland's car was in fact stolen by one or more of the Defendants.

After Davis allegedly put Allstate on notice that "he may make a claim for uninsured motorist benefits and/or a claim for medical and/or wage loss benefits pursuant" to the Policy, Allstate filed this declaratory judgment action. (Pl.'s Mem. at 3).

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, reveal no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). Our responsibility is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–49, 106 S.Ct. 2505, 2509–11, 91 L.Ed.2d 202 (1986). The presence of "a mere scintilla of evidence" in the nonmovant's favor will not avoid summary judgment. *Williams v. Borough of West Chester,* 891 F.2d 458, 460 (3d Cir.1989) (citing *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11). Rather, we will grant summary judgment unless "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

In making this determination, all of the facts must be viewed in the light most favorable to the non-moving party and all reasonable inferences must be drawn in favor of the non-moving party. *Id.* at 256, 106 S.Ct. at 2514. Once the moving party has met the initial burden of demonstrating the absence of a genuine issue of material fact, the non-moving party must establish the existence of each element of its case. *J.F. Feeser, Inc. v. Serv–A–Portion, Inc.,* 909 F.2d 1524, 1531 (3d Cir.1990) (*citing Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986)).

### II. Application of the Standard to this Case

As noted *supra,* Davis allegedly intends to make claims under two separate provisions of the Policy: the uninsured motorist provision and the first party medical benefits and/or wage loss benefits provision. Count II of the Complaint addresses the uninsured motorist provision and Count III concerns the first party benefits provision. Davis is not named as a defendant in Count I; thus, the instant motion only concerns these two counts.

### A. Count II: Uninsured Motorist Coverage

■ Plaintiff moves for summary judgment based on Count II of the Complaint, the "non-permissive use" provision in the uninsured motorist section of Holland's policy. Holland's policy provides that the following persons are entitled to recover under the uninsured motorist provision:

Insured Persons

These persons are insured under Coverage:

1. You and any resident relative,

2. Any person while occupying your insured auto with the **permission** of you or a resident relative, and

3. Any other person who is legally entitled to recover because of bodily injury to you, a resident relative, or an occupant of your insured auto.

(Pl.'s Mem. Ex. E at 11) (emphasis added).

Plaintiff argues that because Davis is obviously not the named insured or a resident relative of the insured and because he did not have Holland's or a resident relative's permission to be in the car, Davis is a "non-permissive user." Therefore, Plaintiff argues, Davis is excluded from recovery by the express terms of the policy.

Defendant, Davis, responds that he had permission from Bernard to use the car and thus is not excluded by the non-permissive use provision of the policy. (Def. Mem. at 1). The Defendant presents no evidence of this permission from Bernard, nor does he cite

any case law supporting his contention that he had permission.

■ Pennsylvania law allows recovery under an insurance policy with a "non-permissive use" provision if it is possible to establish either express or implied permission to use the car. *See Nationwide Mutual Insurance Co. v. Cummings,* 438 Pa.Super. 586, 652 A.2d 1338, 1344 (1994); *Federal Kemper Insurance Co. v. Neary,* 366 Pa.Super. 135, 530 A.2d 929, 930 (1987). Here, the evidence establishes that Holland gave express permission to Bernard to use the car, but the evidence does not suggest that Holland gave Davis express permission to use the car.[1] Therefore, if Davis is found to have permission it will have to be either on the basis that there was a "nexus" sufficient to establish implied permission from Holland to Davis to use the car or on the basis that implied in Holland's express grant of permission to Bernard was the permission to loan the car to someone else, such as Davis, *et al. See Belas v. Melanovich,* 247 Pa.Super. 313, 372 A.2d 478, 482 (1977).

The Pennsylvania Superior Court has created the following framework in order to establish whether a party has implied permission:

> the critical question will always be whether the named insured said or did something that warranted the belief that the ensuing use was with its consent. There must be 'a connection made' with the named insured's own conduct; proof of 'acts, circumstances, and facts such as the continued use of the car' will be insufficient 'unless they attach themselves in some way to the acts' of the named insured.

*Belas,* 372 A.2d at 483 (quoting *Beatty v. Hoff,* 382 Pa. 173, 114 A.2d 173, 174 (1955); *see also Motorists Mutual Insurance Cos. v. Great Lakes Laboratories, Inc.,* 687 F.Supp. 198, 199 (W.D.Pa.1988); *Nationwide Mutual Insurance Co. v. Cummings,* 438 Pa.Super. 586, 652 A.2d 1338, 1344 (1994); *State Farm Mutual Insurance Co. v. Judge,* 405 Pa.Su-

per. 376, 592 A.2d 712, 714–15 (1991); *Federal Kemper Insurance Co. v. Neary,* 366 Pa.Super. 135, 530 A.2d 929, 933 (1987)).

■ Pennsylvania law requires that there be a "nexus between the acts and the voluntary action on the part of him who must consent." *Belas,* 372 A.2d at 483. Determining whether a sufficient nexus exists is a factual question involving an analysis of " 'the initial grant of permission to determine whether it was broad enough to include an implied grant to the permittee to give another use of the automobile.' " *Id.* at 480. " 'Permission cannot be implied from possession and use of the automobile without the knowledge of the named insured.' " *Cummings,* 652 A.2d at 1344. "In implied consent it is just as necessary to show mutuality as it is in express consent." *Id.* Further, as Plaintiff correctly states, *Nationwide Mutual Insurance Co. v. Cummings,* 438 Pa.Super. 586, 652 A.2d 1338 (1994) holds that a *passenger* in a car, as well as the driver, is subject to the non-permissive use provision, as the Motor Vehicle Financial Responsibility Law ("MVFRL") defines "use" in such a way to incorporate occupants and passengers.[2] *Cummings,* 652 A.2d at 1345.

In *Belas v. Melanovich,* the Pennsylvania Superior Court, interpreting a non-permissive use provision similar to the one in the case before us, found that a passenger in a stolen vehicle could not recover under the named insured's policy. 247 Pa.Super. 313, 372 A.2d 478, 479 (1977). In *Belas,* an aunt, who was the named insured, loaned her car to her nephew for the evening with the only restriction that the car be returned before midnight. 372 A.2d at 480. The nephew then loaned the car to one of his friends who was subsequently in an accident where the passenger was injured.

To determine whether the passenger in *Belas* had implied permission to use the car, the court analyzed the grant of permission from the aunt to the nephew to determine if

---

1. Defendant has admitted in his answer to Plaintiff's Motion for Summary Judgment that he may not have had permission from Holland, but he avers that he did have permission from Bernard; however, Defendant has not provided any affida-

vits, depositions, or other evidence of this permission. (Def.'s Ans. at 1).

2. The defendant Davis is not alleged to have been the driver of Holland's vehicle.

it was broad enough to include permission to loan the car to his friend. *Id.* at 482. The court concluded that there were no facts on the record to "support a finding of a connection between [the named insured and the ultimate driver of the car]." *Id.* at 485. The named insured was not found to have known or even spoken with the driver. *Id.* Further the court found that there was no indication to the insured that her nephew would loan the car to someone else or any evidence that he had ever loaned the car to another on previous occasions when he had used it. *Id.* Due to these factual findings, the court held that the evidence "was not enough to permit a finding of any permission by [the insured] encompassing [the driver's] use of her automobile."[3] *Id. See also Motorists Mutual Insurance Cos. v. Great Lakes Laboratories, Inc.* 687 F.Supp. 198 (W.D.Pa.1988) (holding that driver did not have named insured's implied permission to use car where father gave the son permission to use car and the son lent the car to someone else).[4]

Plaintiff relies on *Cummings,* a case similar to *Belas,* as further support for the position that Davis should be excluded from recovery in this action. 438 Pa.Super. 586, 652 A.2d 1338 (1994). In *Cummings,* the plaintiff was a passenger in a stolen car; however, he did not know the car was stolen because the driver of the car told him it was his aunt's car. *Id.* at 1339. The *Cummings* court held that the plaintiff was still barred from recovery by the non-permissive use provision in the statute. *Id.* at 1345. In thus holding, the court determined that the non-permissive use provisions are "not invalid as against legislative intent and public policy" and that the term "use" in a non-permissive use provision "incorporates the terms 'occu-

pant' and 'passenger.' " *Id.* Because the named insured in *Cummings* did not grant permission to use the car to the person who stole the car, nor to the unwitting passenger, the court determined that there was no permission from or connection with the named insured to allow use of the car, and thus there could be no recovery. *Id.*

We conclude, after a thorough review of the record, that no reasonable jury could find that there is a connection or sufficient nexus between Holland and Davis that would support a finding of implied permission. Further, even assuming Bernard did give permission to Davis to use the car, no reasonable jury could find that the permission given by Holland to Bernard is broad enough to include implied permission to allow someone else, such as Davis, to use the car.

Holland's deposition testimony reveals that Holland had never spoken to or even met Davis, or had any other connection with Davis that would establish a basis for a sufficient nexus between Holland and Davis to establish implied consent. (Holland Dep. at 5–7, 17). Holland's deposition testimony also reveals that Holland's grant of permission to Bernard is not sufficient to establish a basis of implied permission.

Holland testified that she gave Bernard permission to use the car during the day on November 16, 1994 in order to retrieve his belongings from his van in Philadelphia. (Holland Dep. at 8). Bernard was instructed to bring the car back to Holland by the time she got off work at 4 p.m. (Holland Dep. at 8–9). Holland testified that although she did not specifically state that Bernard was not to loan the car to anyone else, her understand-

---

**3.** *But see Adamski v. Miller,* 545 Pa. 316, 681 A.2d 171 (1996) (holding that where a mother had established a place of residence for her pregnant daughter and her daughter's boyfriend and loaned the daughter her car; where the daughter had allowed the boyfriend to use the car and the boyfriend was the one who maintained and serviced the car; and where the mother had seen the boyfriend driving the car without telling him not to, that the boyfriend had implied permission to use the car. The court found that the evidence demonstrated implied permission through the "relationship between the parties" and the "course of conduct.")

**4.** There is a line of Pennsylvania cases as represented by *Ector v. Motorists Insurance Cos.,* 391 Pa.Super. 458, 571 A.2d 457 (1990) which allowed an uninsured pedestrian who was injured by a stolen car to recover from the title holder's insurance policy; however, this line of cases has been specifically limited by the Pennsylvania Superior Court and is thus not applicable to this case. *See Frazier v. State Farm Mutual Automobile Insurance Co.,* 445 Pa.Super. 218, 665 A.2d 1 (1995) (stating that *Ector* was decided on the "maximum feasible restoration" principle of the No–Fault Act which "no longer exists in Pennsylvania law").

ing was that Bernard was only to use the car to retrieve his belongings. (Holland Dep. at 14–15, 18). Further Holland testified that she did not give Bernard permission to loan the car to anyone else. (Holland Dep. at 18). Holland did not say or do anything that would lead Bernard to reasonably believe he could loan the automobile to Davis,. et al. Additionally, nothing appears in the record to suggest that Holland might have known or suspected that Bernard would loan the car to Davis, et al.

In sum, we conclude that the record ˙is devoid of evidence that Holland made any connection with the Defendant, Davis, to establish implied permission for his use of the vehicle. Therefore, we enter judgment in Plaintiff's favor pursuant to Rule 56 on Plaintiff's Count II, the uninsured motorists claim.

### B. Count III: First Party Medical and/or Wage Loss Benefits

■ Plaintiff also moves for summary judgment on Count III of the Complaint, the first party medical and wage loss benefits provision, based on the "knowing converter" clause of Holland's policy. The First Party Benefits provision of Holland's policy provides the following exclusions to recovery:

Exclusions

This coverage does not apply to bodily injury to . . .

© any person other than the named insured or any relative, who **knowingly converts** a motor vehicle if the bodily injury arises out of the maintenance or use of the converted vehicle;

(Pl.'s Mem. Ex. E at 8) (emphasis added).

Plaintiff asserts that the driver of the car was a "knowing converter" who will not be allowed recovery of first party medical or wage loss benefits by the express language of the policy. Therefore, Plaintiff asserts, Davis, as a passenger of a knowing converter, should also not be allowed recovery under the express terms of the policy. Defendant responds that the car was not knowingly

converted, but was instead used with the permission of Bernard.[5] .

Plaintiff correctly notes that an exclusion based on a "knowing conversion" clause is consistent with the MVFRL. (Pl.'s Mem. at 10); see 75 Pa.C.S.A. § 1718(b) (Purdon's 1996). However, this court has not found, and the parties have not provided, any Pennsylvania case law that interprets the meaning of "knowing conversion" or "knowingly converts" in this context.[6] Nor is the term defined in Holland's policy or the MVFRL.

■ Interpreting the meaning of a policy exclusion is a question ˙of law for the court. Home Insurance Co. v. McGovern, 837 F.Supp. 661, 666 (E.D.Pa.1993). When interpreting a policy, if "a provision of the policy is ambiguous, the policy provision must be construed in favor of the insured and against the insurer, the drafter of the agreement." Federal Kemper Insurance v. Sicherman, 739 F.Supp. at 997 (citing Mohn v. American Casualty Co. of Reading, 458 Pa. 576, 326 A.2d 346 (1974)). "A provision of an insurance policy is ambiguous if reasonably intelligent men on considering it in the context of the entire policy would honestly differ as to its meaning." Id. at 998 (quoting Celley v. Mutual Benefit Health & Accident Ass'n, 229 Pa.Super. 475, 324 A.2d 430, 434 (1974)). However, if the language of the policy is "clear and unambiguous, a court is required to give effect to that language." Id. at 998. Further, unambiguous terms are to be given their plain and ordinary meaning. McGovern, 837 F.Supp. ·at 666. Finally, "[a]n insurance company bears the burden of proving that a policy exclusion is applicable to a particular case." Id.

■ Under Pennsylvania law, the common law definition of conversion is "the 'deprivation of another's right of property, or use or possession of a chattel, or other interference therewith, without the owner's consent and without legal justification.'" Universal Premium Acceptance Corporation v. York Bank & Trust Co., 69 F.3d 695, 704 (3d

---

**5.** As noted earlier, however, Defendants provide no affidavits, deposition testimony, or other evidence of this fact.

**6.** Many courts have interpreted the non-permissive use clause that appears in the uninsured motorist section of the policy. See discussion supra.

Cir.1995) (quoting *Cenna v. United States,* 402 F.2d 168, 170 (3d Cir.1968)). At first glance it appears this definition may have encompassed the actions of Davis, *et al.,* because they used or possessed the chattel without the owner's consent as discussed *supra.* This would, in effect, give the same meaning to the "knowingly converts" clause as the "non-permissive use" clause. However, the Allstate policy specifically uses the term "knowingly converts" as opposed to simply using the common law term "converts."

The inclusion of "knowingly" raises the standard. The ordinary meaning of the word knowingly, according to Black's Law Dictionary, is acting with knowledge; consciously; or intelligently. 872 (6th ed. 1990). "An individual acts 'knowingly' when he acts with awareness of the nature of his conduct"; and with "awareness of probable consequences." *Id.* One acts knowingly when he is "aware that . . . his conduct will cause a certain result." *Commonwealth v. Martin,* 694 A.2d 343 (Pa.Super.1997).

Although there are no cases defining "knowingly converts" in the insurance context, the United States Supreme Court in *Morissette v. United States,* 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952) does define "knowing conversion" in a criminal context. The Court in *Morissette* states that "at common law, there are unwitting acts which constitute conversions." *Id.* at 270, 72 S.Ct. at 253. The Court recognizes that under this common law definition of conversion "if one takes property which turns out to belong to another, his innocent intent will not shield him from making restitution or indemnity." *Id.* On the other hand, the Court notes that "knowing conversion requires *more than* knowledge that Defendant was taking the property into his possession. He must have had knowledge of the facts, though not nec-

essarily the law, that made the taking a conversion." *Id.* at 270–71, 72 S.Ct. at 254 (emphasis added).

Thus, the language of Holland's policy is clear, and Plaintiff has not met the burden imposed by their own policy language. That is, Plaintiff has not met the burden of showing that the defendants used the car *with knowledge* that they were using it without the owner's consent. Plaintiff has merely asserted that the driver was a knowing converter and that Davis was a passenger of a knowing converter. Plaintiff has not provided any admissible evidence to indicate that the car was, in fact, stolen [7] or used without the consent of Bernard.[8]

Therefore, we conclude that Plaintiff has not met the burden of proving that no genuine issue of material fact exists concerning whether Davis qualifies as a "knowing converter" under the first party medical benefits portion of the policy.

## CONCLUSION

An appropriate Order follows.

## ORDER

AND NOW, this 16th day of September, 1997, upon consideration of Plaintiff's Motion for Summary Judgment, Defendant's Answer thereto, and Plaintiff's Reply, it is hereby ORDERED that said motion is GRANTED as to Count II, the uninsured motorist provision, and DENIED as to Count III, the first party medical and wage loss benefits provision.

Plaintiff has no obligation to provide uninsured motorist benefits to Defendant Attoy Davis.

---

7. The only evidence Plaintiff has provided is inadmissible hearsay from Holland's deposition of what Bernard told her happened to the keys. *See* Fed.R.Civ.P. 56(e) (stating summary judgment must be based on admissible evidence).

8. Further, even if the car had been "knowingly converted," the Plaintiff has not shown that a passenger in a car which was knowingly convert-

ed would be subject to the policy's exclusion. As discussed *supra,* the Plaintiff correctly relies on *Cummings* to support their contention that passengers are non-permissive users subject to exclusion under a non-permissive use clause. However, *Cummings* did not involve a "knowing converter" clause as is involved in this section of the policy.